WILLIAM H. FRY *et al.* v. J. W. RUSH *et al.*

No. 12,492.   (65 Pac. 701.)

SYLLABUS BY THE COURT.

1. JUDGMENT—*Final Order—Review.* Although some parts of a judgment may be interlocutory in their nature, yet, where others are definitive and by their terms exclude the possibility of further action by the trial court as to the issues and as to all the parties to the cause, the adjudication is such a final order as will entitle the parties whose rights are definitely determined to a review.

2. CORPORATIONS—*Office and Officers—Pleading.* The laws of this state provide for annual elections of directors of corporations and for filling vacancies in the directorate and other offices, and an allegation in a petition that certain vacancies existed at one time, or that the directors in office at a particular time were inefficient or derelict in duty, does not raise a presumption that such state of facts will continue from year to year.

3. —— *Action by Stockholder—Conditions Precedent.* In an action by a stockholder for the benefit of a corporation, he must allege and prove not only that he is a stockholder in such corporation, but also that he has, in good faith and without success, attempted to secure action by the directors or managing officers of the corporation, or, in lieu thereof, facts sufficient to show that such attempt would be unavailing.

4. —— *Multifariousness in Pleading.* The petition in the case at bar is objectionable because it presents two distinct forms of the vice of multifariousness—that of uniting in the same count distinct and disconnected causes of action, and that of joining, both as plaintiffs and defendants, parties without a common interest.

5. PRACTICE, DISTRICT COURT—*Practice of Making Rules for Particular Cases not Justifiable.* A trial court is not justified in giving little heed to the usual and more orderly methods of conducting judicial investigations because it regards the end to be attained—that of undoing the wrong accomplished—as of greater moment than the maintenance of legal *formulæ.* However defensible such course may be in morals, it may not be followed in law. Courts should not make rules for particular cases. and no excuse exists for doing so when the application of those already prescribed and approved by time and experience will afford ample relief.

Error from Pawnee district court; J. E. ANDREWS, judge. Opinion filed July 6, 1901. Division two. Affirmed in part, reversed in part.

### STATEMENT.

ON April 9, 1895, J. W. Rush commenced an action in the district court of Pawnee county against the Western Kansas Loan and Mortgage Company, alleging that it had suspended business for more than three years and had held no election of officers; that its president, secretary and general manager had each sold his stock and resigned, and said offices were vacant; that there was not a quorum of directors existing for the transaction of business; that the assets consisted chiefly of bank stock and past-due paper about to be barred by the statutes of limitation; that there was imminent danger of insolvency; that the plaintiff was the owner and holder of a majority of the capital stock, and that there was no adequate remedy at law to protect his interest. The petition concluded with a prayer for dissolution and for a receiver. William Scott, who is a defendant in error in this case, was appointed receiver, but was afterward removed, and William Mansfield, one of the plaintiffs in error in this cause, was appointed in his stead. Much litigation ensued, and on February 1, 1897, it being shown that all the litigation had been disposed of and all the debts of the corporation paid, including the expenses of the receivership and of that action, the receiver was discharged and the case dismissed.

On March 1, 1897, J. W. Rush and William Scott commenced this action in the same court against the following parties defendant: The Western Kansas

Loan and Mortgage Company, William H. Fry, William Mansfield as receiver of the Western Kansas Loan and Mortgage Company, William Mansfield, W. H. Vernon, Ella P. Vernon, E. A. Austin, Ada F. Charles, F. D. Smith, and S. W. Vandivert. With the exception of the first two, none of them was a party to the former suit. W. H. Vernon had been attorney for the receivers, Scott and Mansfield; E. A. Austin and F. D. Smith had been attorneys for Fry and Mansfield; Ella P. Vernon and Ada F. Charles had purchased certain assets from the receivers; and S. W. Vandivert was the judge who had made most of the orders. The petition, among other things, alleged:

"That in June, 1896, W. H. Vernon, Fred D. Smith, Edwin A. Austin, Wm. Mansfield and S. W. Vandivert wilfully, fraudulently and corruptly combined, conspired and confederated together for the purpose of cheating, swindling and defrauding the W. K. L. & M. Co. of all its property, and of defrauding J. W. Rush of all his interest therein; that in pursuance of the same all of the defendants last mentioned assembled in the office of W. H. Vernon and there prepared all the orders hereinafter complained of; that the said judge did then and there render the judgments hereinafter complained of, and at different times signed all of said orders and rendered all of said judgments in said office, without trial or examination of any kind, and afterwards announced the same from the bench; that Scott had a good and valid defense to objections to his report as receiver, but was prevented from making use of the same by reason of being terrorized and held in contempt by the said S. W. Vandivert and the other defendants mentioned, and that Rush had a good and valid cause of action, as set forth in his original petition in the former action; that all of the assets sold and converted into cash by Mansfield, receiver, belonged to the W. K. L. & M. Co., and that none of said defendants had performed any legal services for the amounts allowed

them; that the plaintiffs were prevented by the fraud, oppression and misconduct of the persons named from having a fair and impartial trial, and that the judge was an interested party in the suit and had no jurisdiction in said matters, and that the whole proceedings were fraudulent and void."

This petition concluded with the following prayer:

"Wherefore, plaintiffs demand that the pretended final judgments rendered on the 8th day of February, 1897, and all judgments and orders and rulings and proceedings made and allowed in said action, be set aside, held for naught, and that all the deeds and assignments as made by the said William Mansfield or any of the other defendants to any and all of the property in said action be set aside, canceled, and held for naught; that all orders made in said action for the allowance of attorney fees, costs and expenses in said action be set aside and held for naught; that all deeds and assignments made and executed by William Mansfield as receiver in said action be declared canceled, void, and of no effect; that the plaintiffs be restored to all rights and things that they have lost by reason of the proceedings, and that a new trial be granted."

Demurrers were filed by the defendants, William Mansfield as receiver, William Mansfield, W. H. Vernon, Ella P. Vernon, E. A. Austin, Ada F. Charles, F. D. Smith, and S. W. Vandivert, for the following reasons: (1) Incapacity of plaintiffs to sue; (2) defect of parties; (3) misjoinder of causes of action; (4) insufficient facts to constitute a cause of action. The defendant S. W. Vandivert was afterward dismissed from the case. These demurrers and all other motions by the defendants were overruled by the court. The cause was tried without a jury, and on September 23, 1898, the court found for the plaintiffs, the

Fry v. Rush.

substance of its judgment and decree, as stated by counsel for plaintiffs in error, being as follows:

"1. It sets aside the order finding the facts concerning and removing William Scott and appointing William Mansfield as receiver, of August 17, 1896.

"2. It sets aside the order finding the facts concerning and against J. W. Rush and Wm. Scott, of September 7, 1896.

"3. It sets aside the order permitting Wm. H. Fry to intervene as an additional party plaintiff, of August 17, 1896, and strikes his intervening petition from the files.

"4. It sets aside the order dismissing Rush as a party plaintiff, on November 26, 1896.

"5. It sets aside the order directing Wm. Mansfield, as receiver, to sell real estate and other assets, of October 19, 1896, the order confirming such sale, and all proceedings touching or concerning such sale.

"6. It annuls the deeds made by the receiver to Ella P. Vernon, Ada F. Charles, and Edwin A. Austin, and decrees the full legal and equitable title to still remain in the Western Kansas Loan and Mortgage Company, orders them to surrender their deeds for cancelation, and enjoins them from selling, attempting to sell and from exercising any control or dominion over said real estate.

"7. It gives Ada F. Charles a lien on the land described in the deed to her for the amount of her purchase-money, directs a sale for the payment of the lien, with interest after six months.

"8. It sets aside the various orders allowing W. H. Vernon, E. A. Austin and F. D. Smith attorneys' fees, and allowing William Mansfield fees as receiver, and finds the amount each received to be, to wit: E. A. Austin, $726; F. D. Smith, $650; William Mansfield, $342.97.

"9. It in recapitulation sets aside all the proceedings on, from and after August 11, 1896, reinstates Rush as plaintiff, reinstates Scott as receiver, reinstates the case of Rush v. The Western Kansas Loan

and Mortgage Company for such proceedings as the exigencies of the case may require.

"10. It orders E. A. Austin to pay Scott, as receiver, $726; and F. D. Smith to pay Scott, as receiver, $650; and Wm. Mansfield to pay Scott, as receiver, $342.97 (within twenty days).

"11. As a finality, it orders Wm. Mansfield to surrender to Wm. Scott, receiver, all things of the Western Kansas Loan and Mortgage Company in his possession or under his control."

The object of reinstating the original case, as set forth in subdivision 9 of the quotation from the statement of the contents of the judgment by counsel for plaintiffs in error, was stated by the court, in its eleventh conclusion of law, as follows:

"The receiver will hold all of said trust property subject to the ultimate distribution among the stockholders and parties entitled thereto. A suitable order will be made and notice given requiring all creditors of said corporation to appear and file their claims in said cause, to the end that they may be terminated and either allowed or disallowed; and also an inquiry will be instituted for the purpose of locating all stockholders of said corporation, to the end that the surplus of said estate may be properly apportioned and distributed among them."

To reverse the judgment of the district court this proceeding in error was begun.

*Samuel Jones, E. C. Cole, J. W. Rose, C. Bucher,* and *F. Dumont Smith,* for plaintiffs in error.

*Joseph G. Waters, D. A. Banta, Nelson Adams, G. Polk Cline,* and *Rossington, Smith & Histed,* for defendants in error.

The opinion of the court was delivered by

ELLIS, J.: We are met at the threshold of this case with a motion to dismiss the petition in error for the reason that the adjudication of the court below was not a final order or judgment, but it must be overruled.    While some parts of the judgment were interlocutory in their nature, others were definitive, and by their terms excluded the possibility of further action by the trial court.    Among these latter were orders and decrees applying to each of the plaintiffs in error and determinative of their rights herein.    The mere fact that the allowance of claims of creditors, and the distribution of the assets of the mortgage company—matters not in issue by the pleadings, and in which the plaintiffs in error were nowise interested—were left by the decree subject to further consideration and adjustment by the court, cannot deprive the parties here complaining of their right to appeal.    The judgment was final as to the issues, and as to all the parties before the court, and being denied a new trial, plaintiffs in error were required to move for a review ;  and had they not done so at the time and in the manner that they did, they could not thereafter have been heard to complain in a reviewing tribunal.

1. Final order— right to review.

For the purposes of this case, we shall assume that the order made in the original case on August 17, 1896, requiring each of the plaintiffs below to pay to William Mansfield, as receiver, the sum of $5590.75, constituted a joint judgment against said Scott and Rush; and we shall also assume that, for want of jurisdiction, the court had no authority to render such judgment, and that it was fraudulent and void. The defendants in error contend that it could have

been set aside upon motion, under section 603 of chapter 95, General Statutes of 1897 (Gen. Stat. 1901, §5061). It is undoubtedly true that such pretended judgment could have been thus revoked, and we think it is also true that the plaintiffs, Scott and Rush, could jointly maintain an action for the purpose of annulling that judgment.

The defendants in error insist, however, that, because they had a common interest in one matter which they might properly make a subject of action and thus obtain a standing in court, after being admitted into the forum as litigants they were there for all purposes anywise connected with the original case brought by Rush against the defendant mortgage company in which action Scott was receiver. This conclusion is without foundation in law, and presents an anomaly in fact.

In the original action Rush alleged that he was a stockholder in the defendant mortgage company, which allegation was doubtless true when made. In this action no such averment was contained in the petition, but an attempt was made to adopt the allegations of the former petition, for the probable purpose of having it inferentially appear that he was still a shareholder in that corporation, that its directorate was still not full, and that the members thereof still refused to act in harmony or to do the things necessary to protect the corporation and preserve its property. The allegation made in the petition in this case was not sufficient for that purpose, and the most that can be claimed for the pleading is that, by adopting the petition in the former case, it was alleged in the latter that at the time the first petition was filed the facts therein stated existed ; but in the absence of an alle-

2. Corporation officers—presumption and pleading.

gation that such facts continued to exist at the time of the filing of the petition in this case, no such deduction can fairly be made. It follows, then, that in this action it was not even alleged that at the time of bringing the action Rush was a stockholder, and it is true that such question was made an issue in the case; that evidence was offered tending to prove that Rush had parted with his stock while the former action was pending; that, although expressly requested so to do, the court failed to make any finding on the proposition.

It is also significant that, although the defendant mortgage company asked no affirmative relief in this case, it voluntarily appeared and filed pleadings therein, which would seem to indicate that, whatever may have been the fact in 1895, it had, when this action was commenced, in March, 1897, officers with authority to employ an attorney to represent it; and, as the corporation had not been dissolved, it must be presumed that such was the fact at the time this suit was brought. The mere fact that in a pleading filed two years before it was alleged that it had not a quorum of directors and the usual officers, or that those who were then directors did not act in harmony, would not avoid the necessity of proper allegations and proof as to the facts which actually existed at the time this cause was instituted. The laws of this state provide for annual elections of directors of corporations, and for the filling of vacancies in the directorate and the officers provided for under the charter (Gen. Stat. 1901, §§ 1276, 1277), and an allegation in a petition that certain vacancies existed at one time, or that the directors in office at a particular time were inefficient or derelict in duty, does not raise a presumption that such state of facts will continue from year to year.

Neither in the first petition nor in the second one was any sufficient allegation made to justify the bringing of this suit for the benefit of the defendant mortgage company by one who was in fact a stockholder when the petition herein was filed. So that, if we waive the question as to whether there was an averment that Rush was a stockholder, and assume that such fact was properly asserted, he could not bring the action without alleging that he had in good faith, and without success, attempted to secure action by the directors or managing officers of the corporation, or making it appear that such demand for their action would be unavailing. (*A. T. & S. F. Rld. Co. v. Comm'rs of Sumner Co.*, 51 Kan. 617, 33 Pac. 312.)

3. Action by stockholder— conditions precedent.

In the case of *Taylor v. Holmes*, 127 U. S. 489, 491, 8 Sup. Ct. 1193, 32 L. Ed. 180, the court said:

"The court below sustained the demurrer to the bill upon two principal grounds: . . . second, that no sufficient reason is shown why the suit should be brought by two stockholders instead of by the corporation itself, in its own name. We think both of these grounds or either of them sufficient to sustain the position taken by the court below.

"It is, however, alleged that the corporation itself is extinct by reason of the limitation placed upon its existence under the articles of incorporation, by which it expired on the 30th day of August, 1878. But, under the laws of New York, the existence of such a corporation was continued after the period for which it was limited for the purpose of winding up its business and for the purpose of collecting and distributing its assets and paying its debts. Although the allegation of the bill is that many of the directors of the company are dead, still it is shown that one of them survives, and no assertion is made that there was any application to this surviving director on the part of the defendants for the purpose of instituting

any proceedings looking to the rectification of this deed, or for the recovery of the real estate in North Carolina; nor does it appear that there was any request made to him to bring any suit either at law or in chancery for that purpose. No effort was made to call together the stockholders to take any action on the part of the company, or to elect other directors, or to obtain any united action in the assertion of the claims now set up.

"Although there is in the bill a declaration that the two complainants are owners of a majority of the stock of the Gold Hill Mining Company, there is no statement as to when or how they became such, or whether they were such stockholders during the times that injuries were inflicted, of which they now complain, in regard to the taking possession of the property by the defendants, or whether they became stockholders afterwards. In short, there is no such averment of their relation to the corporation or of their interest in the matter, about which they now seek relief, as brings this action within the principle of the decisions of this court upon the subject. *Hawes v. Oakland*, 104 U. S. 450, 26 L. Ed. 827.''

(See, also, *A. T. & S. F. Rld. Co. v. Comm'rs of Sumner Co.*, supra; *Mining Co. v. McKibben*, 60 Kan. 387, 56 Pac. 756; *Doud and others v. Wisconsin, Pittsville & Superior R. Co. and others*, 65 Wis. 108, 25 N. W. 533, 56 Am. Rep. 620; *Alexander, Trustee, et al., v. Searcy et al.*, 81 Ga. 536, 8 S. E. 630, 12 Am. St. Rep. 337.)

In the case of *Talbot v. Scripps*, 31 Mich. 268, it was held:

"The legal redress for a corporate wrong which constitutes a joint injury to all the stockholders should be at the instance of the corporation, which represents all for the purposes of legal remedy; and a stockholder is not entitled to bring suit in his own name for the damage done to him individually, at least not without a showing that the corporate authorities have refused, after proper application, to act.''

Cook, in his work on Stock and Stockholders and Corporation Law, section 740, says:

"Inasmuch as a fraud, *ultra vires* or negligent act of the directors of a corporation is an injury done to the corporation itself, it is the duty and proper function of the corporation to institute any action that may be brought to remedy the injury to the corporation. As already explained, however, a stockholder may bring the action if the corporation improperly refuses or neglects to institute such suit. Before the stockholder brings suit he must make a formal request to the corporate officers that suit be instituted by the corporation. Upon its refusal or neglect to comply with that request he may then bring suit himself. It is well settled, however, that he must allege in his bill in equity that such a request has been made and has not been complied with."

It will be seen by the foregoing authorities that the excuse sought to be given by Rush for bringing the first action in his own name would not be sufficient if the averment had related to the time of bringing the last action, and had been in fact made in the petition in this case. He alleged that at the time of bringing the first action the corporation had five directors, and he did not claim that the attention of any one of them had ever been called to any of the matters which were made the basis of that action; and it need scarcely be said that, even if a direct request had been made to bring the earlier action and had been refused, such request and refusal would have no relevancy to this case, in which the subject-matter was wholly distinct and dissimilar.

As before intimated, the petition in this case is also objectionable because it presents two distinct forms of 4. Multifariousness in pleading. the vice of multifariousness—that of uniting in the same count distinct and disconnected subjects, matters, and causes, and that of

joining in the same suit, both as plaintiffs and defendants, parties who are without a common interest in the subject of the litigation and have no connection with one another. (14 Encyc. Pl. & Pr. 200.) These objections to the right of plaintiffs to maintain this action, and to the misjoinder of plaintiffs and defendants, were properly raised in the court below by motions to make definite and certain, separately to state and number the causes of action, to require the plaintiff Rush to state in his petition whether he was a stockholder in the defendant mortgage company, and, if so, to what extent, at the time the action was brought, and to require the plaintiff Scott to state whether he had any interest in the defendant corporation or in the redress asked. The same matters were also raised by separate demurrers, and again by separate answers, and still again by requests for special findings on these facts. The motions and demurrers were overruled, the allegations of the answers ignored, and the requests for special findings denied.

If we were to admit that the allegations made in the former petition should be applied as of the date of the latter, still there would be no community of interest in the principal things sought to be done, and which were actually done in this case, between Rush and Scott. Neither of them would have a legal capacity to bring this action for the benefit of the mortgage company, which they allege was at all times the owner of all the assets mentioned and described in the petition, and the sole beneficiary in the relief sought and attempted to be granted in respect to such assets. As before stated, they could not maintain such action jointly except for the one purpose of securing an annulment of the order requiring them to pay a sum of money to the receiver in the former ac-

tion.   Scott could not maintain this action to be reinstated as receiver, and he did not even pray for such relief, and, even if he could have a standing in court for such purpose, Rush could not be joined as plaintiff for the purpose of making an application to have something done which did not concern or involve his interests.

We are aware that in cases like the present the temptation to ignore ordinary forms of procedure is very great.   The plaintiffs below alleged, and the court in effect found, that the entire proceedings in the original case, from the time of the entry of the first order for an additional report from Receiver Scott to the final order dismissing the case with prejudice, were tainted with fraud, were signalized by an utter disregard for the natural and inalienable rights of men to liberty and property, and were carried out and rendered effective by acts of judicial wrong and oppression which would have disgraced that which was called a tribunal of justice in a barbaric age.   On these facts we express no opinion, and merely refer to them as an inducement to the conclusion that they probably afforded what appeared to the trial court as a justification for giving little heed to the usual and more orderly methods of conducting judicial investigations, because he regarded the end to be attained —that of undoing the wrong which he found had been accomplished—as of far greater moment than the maintenance of legal *formulæ*.   However defensible such course may be in morals it may not be followed in law.   The courts have no authority to make rules for particular cases, and no excuse exists for so doing when the application of those which are already prescribed and have been approved by time

5. Rules for particular cases not favored.

Shattuck v. Bank.

and experience will afford ample relief.   The mortgage company is not without remedy, and may, by proper proceedings, have returned to it any property or money of which it has. been defrauded or otherwise unlawfully deprived.

It follows that the demurrers of the defendants William Mansfield, W. H. Vernon, Ella P. Vernon, E. A. Austin, Ada F. Charles and F. D. Smith should have been sustained, and that the orders and decrees, so far as they relate to said defendants below and each of them, were unauthorized.   The judgment of the court below setting aside, annulling and canceling the order and pretended judgment for $5590.75 against plaintiffs below, Rush and Scott, made on August 17, 1896, is affirmed, and in all other respects reversed, and the cause is remanded to the court below with direction to sustain the demurrers of the defendants William Mansfield, W. H. Vernon, Ella P. Vernon, E. A. Austin, Ada F. Charles, and F. D. Smith.

SMITH, CUNNINGHAM, JJ., concurring.