No. 34,656

C. E. Hawley and O. V. Ray, *Appellees*, v. G. W. Wells, T. P. Sparke, O. T. Madden, G. S. White and A. E. Jarvis, *Appellants.*

(99 P. 2d 784)

Opinion filed March 9, 1940.

*Carl Van Riper,* of Dodge City, and *A. L. Moffat,* of Kinsley, for the appellants.

*John A. Etling* and *W. N. Beezley,* both of Kinsley, for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: This was an action by stockholders of a bank in behalf of their corporation against the defendant directors thereof to set aside and hold for naught a sale of fifteen shares of stock in the corporation which the directors had made to themselves and to recover for the corporation the profits defendants had made on the challenged transaction.

It appears that in the spring of 1938 some of the officers, directors and stockholders were contemplating a voluntary liquidation of the First National Bank, of Lewis, Kan. One of the slow assets of that bank was a note for $3,500 executed by one S. A. Rouse in 1923

which had been scaled down or partly charged off from time to time over a period of years, until in the spring of 1938 it was 'carried on the books of the bank at a valuation of $650 (plus $30 accrued interest) and was secured by fifteen shares of the capital stock of the bank owned by Rouse.

On May 11, 1938, the board of directors met, all five of these defendants, no others being present. On motion it was decided to accept $250 in cash and the fifteen shares of bank stock in final payment of the note of S. A. Rouse.

On May 14, at an adjourned meeting the same defendant directors, no others being present, voted to have the Rouse shares of stock transferred to themselves individually at the figure at which they were taken over by the bank two days before, in the settlement of the Rouse indebtedness. That figure was $430. Each of the five defendant directors accordingly paid into the bank the sum of $86, and three shares of the bank stock were reissued to each of them— at $28.66 per share.

The book value of the stock at that time was $117 per share.

Significant entries in the minutes of the board of directors at subsequent meetings held shortly thereafter, in part, read:

"May 16, 1938. . . . The meeting was called to order for the purpose of appointing a committee to sell the assets of this bank to the Home State Bank for book value of our stock for cash. G. [S.] White and Ben Bordewick were appointed to receive the offer and present it to the shareholders at a future meeting.

. . . . . . . . . . . . . . . . .

"May 23. . . . The meeting was called for the purpose of discussing voluntary liquidation, . . . A. E. Jarvis moved that the First National Bank of Lewis, Kan., go into voluntary liquidation. Seconded by T. P. Sparke. Carried."

The plaintiff stockholders went through the formality of demanding that the board of directors institute proper proceedings to restore the bank's assets existing before the challenged transaction occurred. They also demanded that the bank's liquidating agent should proceed against the defendant directors to attain the same object. Both demands were refused, and this action followed.

On issues joined the cause was tried by the court without a jury. The court made findings of fact and conclusions of law in favor of plaintiffs, and gave judgment as follows:

"And now on this 8th day of September, 1939, . . . It is by the court considered, ordered and adjudged that the said plaintiffs have judgment herein,

for the benefit of the First National Bank of Lewis, Kan., a national banking corporation, against the defendants, G. W. Wells, G. S. White, A. E. Jarvis, O. T. Madden and T. P. Sparke, and each of them, for the sum of $545, and for costs of this action, taxed at $————, and further judgment and decree against the said defendants last above named that the transfer of fifteen shares of the stock of said First National Bank of Lewis, Kan., to said defendants, and whereby each of said defendants received three shares of said stock, said transfers having been made or authorized on or about the 14th day of May, 1938, and being the fifteen shares of said stock procured by said bank from one S. A. Rouse, be and the same hereby is canceled, set aside and held for naught, and that said defendants and no one of them have any right, or title in or to said stock or any part thereof by virtue of such transfer, and it is by the court further considered, ordered, adjudged and decreed that the First National Bank of Lewis, Kan., is the owner of said stock."

Defendants appeal, assigning various errors which center about their general objection to the net result.

At the outset plaintiffs present a motion to dismiss the appeal on the ground that it was not taken in time. However, owing to the condition of the record, the trial court's submission of tentative findings of fact, the making and mailing of later findings from Denver, Colo. (which involved a question of jurisdiction), and certain subsequent motions which the trial court saw fit to consider and rule upon in sequence, this phase of the appeal is so much entangled in subtleties that we prefer not to consider them unless we find the questions involved in the merits of the appeal equally difficult of solution.

Turning therefore to the latter, we must first take note of the trial court's findings of fact, the substance of which has been included, in part, in our statement above. The trial court found that prior to the final disposition of the Rouse indebtedness the directors of the bank had tried unsuccessfully to sell the Rouse bank stock; that in the spring of 1938 the stock had no market value; that its book value was $117 per share, and that its actual value was uncertain; that the deputy comptroller of the currency had criticized the Rouse loan as excessive—

"Suggesting that the board of directors purchase the Rouse stock in order to enable the bank to collect as much as possible upon his indebtedness, and suggesting that apparently the book value of the asset could be realized and there would be a material recovery on the charged-off portion of the assets of the bank."

The trial court also found that in taking title to the Rouse bank stock in their own names at $28.66 per share—

"The directors did not, in fixing the price for the purchase of this stock, consider the book value of the stock, or the actual value of the stock, but took the stock at a price that would balance the Rouse loan. In this transaction the directors were acting for the purpose of complying with the objections of the bank examiners to the Rouse loan, and did not want to purchase the stock, but did so under the belief that as officials of the bank it was their duty to comply with the requirements of the banking department. The directors acted in good faith in purchasing the stock, but did not act in good faith in determining the purchase price of the stock to themselves."

The court's findings also stated that on the date when the directors purchased the bank stock some of them knew that a movement looking toward a liquidation of the bank was on foot, and two days later the defendant directors did institute proceedings to that effect.

Before this lawsuit was commenced, the liquidation of the bank had so far proceeded that the liquidating agent had paid a dividend of $65 per share on all the bank stock, including the shares the defendants had taken over from the bank at $28.66 per share; and the trial court also found that the remaining assets of the bank would pay a further dividend of $28.33 per share.

The trial court's conclusions of law read:

"(1) The failure of the members of the board of directors to act in good faith in fixing the purchase price of the Rouse stock to themselves rendered the transaction fraudulent and void.

"(2) Since the transaction of the Rouse stock to the members of the board of directors was void, the same could not be ratified by the stockholders at a stockholders meeting.

"(3) The First National Bank of Lewis, Kan., is the owner of the Rouse stock and the certificates of transfer of the Rouse stock to the members of the board of directors should be canceled.

"(4) The First National Bank of Lewis, Kan., has a cause of action for the cancellation of the transfers of the Rouse stock to the members of the board of directors and for recovery of dividends received on said stock since the transfers. The failure of the bank to bring such action upon demand entitles the plaintiff to bring this action for the benefit of the bank.

"(5) The plaintiffs are entitled to judgment against the defendants, for the benefit of the First National Bank of Lewis, for the cancellation of the Rouse stock transfers to the members of the board of directors; and judgment against the defendants, for the benefit of the bank, for the difference between $975 received in liquidating dividends for the fifteen shares of Rouse stock and the $430 paid by the defendants for the Rouse stock, or judgment for $545 and costs."

One of the defendants' objections to the judgment based on the foregoing conclusions of fact and of law is that the plaintiffs did not establish their right to sue on behalf of the corporation and for its

benefit. We think the evidence clearly established the conditions precedent under which minority stockholders could maintain the action. In *Mitchell v. Beachy,* 110 Kan. 60, 202 Pac. 624, it was said:

"It is the law that one or more stockholders who have a substantial amount of corporate stock, *i. e.,* more than a trivial amount, have the right to maintain an action in behalf of their corporation to protect its rights or to redress or prevent injuries to it, where the duty of its officers to do so is clear and imperative and where the latter will not discharge that duty. In *Ryan et al., v. L., A. & N. W. Rly. Co.,* 21 Kan. 365, it was held:

" 'As the corporation itself holds its property as trustee for the stockholders, who have a joint interest in all its property and effects, and each of whom .is related to it as *cestui que trust,* if the corporation refuses to call to account, by proper legal proceedings, its directors and officers who are abusing their trust, misapplying the . funds of the corporation, and receiving profits from contracts made by other parties with the corporation, through their aid, or if such corporation is still under the control of those who necessarily must be made defendants in such proceedings, so that it would be a mockery to require or permit a suit against them to be brought and prosecuted under their management, the stockholders who are the real parties in interest, or a part of them, may maintain an action to make such officers, and all parties who have participated with said officers in their unlawful transactions, account for their wrongs and frauds; and the corporation is a proper party defendant with them.' (Syl. ¶ 4.)" (p. 61.)

In *Planten v. National Nassau Bank,* 160 N. Y. S. 297, which was a suit by a stockholder for himself and other stockholders, in the right of the corporation which was in process of liquidation, for an accounting by directors for losses resulting from their mismanagement, wrongful acts and negligence, three of the headnotes state the pertinent law thus:

"While the authority of a stockholder to sue in the right of the corporation is a rule of necessity, resting solely on judicial decisions, to protect the stockholders when those in authority fail or refuse to protect the rights of the corporation, when a proper foundation is laid for the action by a stockholder, although the cause of action belongs to the corporation, the fruits of the litigation inure to its benefit, and it must be made a party 'defendant, the control of the litigation becomes vested· in the shareholder who brings it and such others as may join therein.

"In order that a stockholder may not be permitted unnecessarily to maintain an action for the benefit of the corporation, he is required to show, as a condition precedent to his right to sue, a demand and refusal by those authorized to represent the corporation, and whose duty it is to bring the action, or facts indicating that a demand upon them would be futile, or that they would not be likely to prosecute the action in good faith.

"Where the affairs of a corporation are in the hands of a receiver, or trustee, or other person who has superseded the board of directors, and is clothed with authority to sue, a stockholder must make demand upon him before bringing

action for the benefit of the corporation, regardless of whether or not the directors are hostile, for in such case their attitude is immaterial."

These same rules have often been stated in our own reports. (*A., T. & S. F. Rld. Co. v. Comm'rs of Sumner Co.*, 51 Kan. 617, 628, 33 Pac. 312, and syl. ¶ 3; *Mining Co., v. McKibben,* 60 Kan. 387, 388, 56 Pac. 756; *Fitzwater v. Bank,* 62 Kan. 163, 166, 61 Pac. 684; *Fry v. Rush,* 63 Kan. 429, 438-440, 65 Pac. 701, and syl. ¶ 3.) See, also, 51 L. R. A., n. s., 99-112.

Defendants stress the fact that the federal bank examiners had insisted that the Rouse loan should be cleaned up. The trial court's findings of fact gave the defendant directors due credit for complying with the bank examiners' requirements, but such compliance gave them no excuse to turn around and by getting on both sides of the subsequent transaction, sell the bank stock to themselves at a fraction of what it was worth. The evidence inherent in the circumstances fully justified the trial court's finding that in so doing the defendants had not acted in good faith. The instances recorded in the lawbooks are rare—and this was not one of them—where a person in a representative capacity deals with himself individually so uprightly that his transaction will successfully pass the scrutiny of a court of equity. In *Meinhard v. Salmon* 249 N. Y. 458, 464, 164 N. E. 545, 546, 62 A. L. R. 1, the late Mr. Justice Cardozo of the United States supreme court, while serving as chief judge of the New York court of appeals, said:

"Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has been developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions (*Wendt v. Fischer,* 243 N. Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

In our own case of *Alumbaugh v. Hedges,* 125 Kan. 449, 453, 265 Pac. 50, we stressed the general rule that executors, administrators, guardians, trustees, and functionaries of that general character, may not traffic to their own private advantage in estates or properties towards which they have any official or moral responsibility. We said this rule was as much a principle of ethics and of practical

honesty as it was of law. (See, also, *Crowley v. Nixon*, 132 Kan. 552, 556-557, 296 Pac. 376.)

It is also argued in defendants' behalf that the evidence did not show that the corporation was damaged by the challenged transaction. The book value of the stock was $117 per share. The defendant directors sold it to themselves for $28.66 per share. It is a fair presumption that the directors had been giving enough attention to the business of the corporation under their charge that they should have had a reasonably approximate estimate of the actual value of the stock. (*National Bank v. Drake*, 29 Kan. 311.) That is what directors are for. It does not seem to have occurred to them to include *in their bargain with themselves* that if it should transpire in the liquidation of the bank that they had grossly underestimated the value of the stock they were selling to themselves they would account to the bank for the disparity and not retain it as their own. Of course it is futile for the courts to deliver a homily on practices of this sort. But when they do come under the scrutiny of the courts, it should not be expected that they should receive the sanction of judicial approval or even of tolerance.

An argument is advanced that the bank "never did acquire title to the stock" of S. A. Rouse. The established facts make that argument untenable. Indeed, the defendants in their answer alleged that "They did not want to *purchase* said stock, and only *did so* because they were required so to do."

And later in their answer defendants alleged that at a regularly called stockholders' meeting a resolution was adopted—

"Approving and *confirming the action of the board of directors in the* liquidation of the Rouse note and *purchase of said stock,* and repudiated the action of the plaintiffs in the institution of this action."

After this lawsuit was commenced, which was on October 26, 1938, the defendant directors met on January 7, 1939, and adopted a lengthy resolution reciting that the minutes of the board of directors dated May 11, 1938, were "indefinite and did not properly set forth the true facts and complete arrangements had at that time concerning the payment of said Rouse note and disposition of said Rouse bank stock aforesaid." The resolution then stated that Rouse arranged with Jarvis to take the fifteen shares of stock and that Rouse agreed to procure the cancellation of the Rouse loan, and that Jarvis was to contribute the $250 in cash which figured in the transaction. We cannot see that this homeopathic explanation

of the transaction would have exculpated the defendants if the trial court had given it credence, and that, of course, the court was not bound to do.

Touching the action of a majority of the stockholders approving the purchase of the Rouse stock by the defendant directors, it should be noted that if their contention *that they did not purchase* the stock from the bank, but got it in a roundabout way from Rouse was correct, then the action of the stockholders' meeting approving and ratifying the purchase was unnecessary and altogether without effect. Passing that, and dealing with the transaction for what it was—as found by the trial court—we think it was so flagrantly improper and against public policy that it was not merely voidable but void and not subject to ratification by a majority vote of the stockholders. (*Land Co. v. Lewis*, 101 Me. 78, 63 Atl. 523; *Continental Securities Co. v. Belmont*, 134 N. Y. S. 635, *Commonwealth v. R. F. & P. R. Co.*, 111 Va. 611, 69 S. E. 1070; 14A C. J. 378-379.) In *Klein v. Independent Brewing Ass'n.*, 231 Ill. 594, 83 N. E. 434, the action was by a minority stockholder who challenged the validity of a sale of property to the corporation by certain of its officers and directors and to require them to account to the corporation for the profits of the transaction. One of the defenses was that the transaction had subsequently been ratified at a stockholders' meeting. But the supreme court said:

"We do not think these acts at the stockholders' meetings can be held to have been a ratification of the action of the directors in purchasing the property. Both these meetings were held after this suit was instituted. . . . In this case, however, the directors purchased from themselves property for an amount much in excess of its value, and this was a fraud upon the stockholders which could not be ratified or condoned by a stockholders' meeting at which a majority of the votes cast in favor of the ratification were cast by or under the control of the directors who were guilty of the wrongdoing. If the reverse were true, then the minority stockholders would be at the mercy of the majority, who would be able to elect the directors and control stockholders' meetngs and thereby ratify the acts of the directors, however wrongful and injurious they might be to the corporation." (pp. 613, 614.)

The judgment is affirmed.