THE WASHINGTON NATIONAL BANK v. SUSIE E. WOODRUM.

### No. 10869.

TRUSTS AND TRUSTEES — *Collateral Security — Estoppel — Pleading and Practice.* Plaintiff deposited with defendant bank notes secured by mortgage on her land as collateral security for the debt of her husband. Divers payments of interest on the collateral notes were made. The bank foreclosed the mortgage, bid in the land, took possession, and received the rents and profits of it. No part of the money paid as interest, or of the sum bid for the land, or of the rents and profits thereof, was applied to the payment of the debt of the husband, but, after the foreclosure and sale of the land, he paid the whole of his indebtedness to the bank from funds of his own. In an action by the plaintiff against the bank to obtain an accounting and reconveyance of her land and cancelation of the judgment for money rendered against her

in the foreclosure suit, and such equitable relief as these transactions warrant, *held:* (1) That the court committed no substantial error in refusing to require the plaintiff separately to state and number as distinct causes of action the facts on which each item of relief is based; (2) that the action is not one for the enforcement of a trust concerning lands, which would be void under the statute of frauds because not in writing, but the trust is one which the law raises by implication from the transactions and relations of the parties and is, therefore, enforceable; (3) that the judgment rendered in the foreclosure suit and the proceedings based thereon do not constitute a bar or estoppel against the plaintiff's cause of action, it appearing that no part of the plaintiff's property, or the proceeds thereof, was appropriated to the payment of the debt which it was given to secure.

Error from Washington district court; F. W. STURGES, judge. Opinion filed December 10, 1898. Affirmed.

### STATEMENT.

THIS action was brought by Susie E. Woodrum against the Washington National Bank. The amended petition on which the case was tried is very long. The substance of its averments are that James G. Woodrum was indebted to the bank and involved in litigation with other parties, and for the purpose of giving additional security for his debt the plaintiff executed with him two notes, one for $1000, the other for $600, secured by mortgage on a half-section of land belonging to her, which, however, was subject to a prior mortgage for $2000; that all of her husband's indebtedness to the bank was evidenced by other notes, the notes and mortgage given by her being taken by the bank to be held only as collateral security for her husband's debt; that the $600 note was reduced, at the last renewal thereof, by payments made on Woodrum's debt, to $374.55, while the $1000 note was increased by the addition of interest to $1025.65; that owing to the condition of the title, which was subject to judgment liens, the officers of the bank

advised foreclosure in order to perfect the title and to realize on the interest of the plaintiff in the land, which was done and the land sold and bid in by the bank; that while the notes were held by the bank interest payments on them were demanded and required to be made in advance at the execution of the notes and their renewals, these payments aggregating $422.95; that the bank obtained possession of the land on November 1, 1892, and had realized rents and profits therefrom amounting to $450; that one quarter-section had been bargained to E. H. Boss for $2000 and a written contract for the sale thereof to him had been executed; that on October 19, 1894, her husband paid all of his indebtedness to the bank with funds of his own, and without the application to such indebtedness of any part of the security received from the plaintiff, but that the bank wrongfully refused to account for or restore to the plaintiff her property or any part thereof.

The defendant moved that the plaintiff be required separately to state and number the various causes of action alleged in her petition, to make her petition more definite and certain, and also to strike out certain portions as surplusage. All these motions were overruled. The defendant then demurred to the plaintiff's petition on all the statutory grounds, and the demurrer was overruled. Thereupon it filed a long answer, the substance of which was that the two notes for $1000 and $600 were given in consideration of the purchase-price of the land mortgaged, which was conveyed to plaintiff by Omar Powell, who held the title for the bank; that default having been made in the payment of the notes the mortgage was foreclosed, and upon a fair sale the land was bid in by the bank; that prior to the commencement of the foreclosure

proceedings the plaintiff had conveyed the land to one C. P. Barley, who held the legal title to it at the time the foreclosure suit was commenced ; that the land was bought in by the bank subject to the $2000 mortgage held by the New England Trust Company on which there was accrued interest then unpaid, and which the defendant was compelled to and did pay in the sum of $2346.95 ; that it had been compelled to pay certain subsequent taxes, and had made lasting and valuable improvements of the value of $350.  By way of counter-claim, the answer states that on March 21, 1895, Barley, who then had no interest in the premises, exe-cuted a deed to plaintiff purporting to convey the land to her, and that she had placed the same on rec-ord, thereby casting a cloud on defendant's title.  The answer concludes with a prayer for a decree quieting the defendant's title to the land.

To this answer a long reply was filed, alleging, among other things, that the conveyance to Barley was merely as security for a small grocery bill, and to enable him if possible to realize out of the sale of the land money sufficient to pay certain indebtedness of the plaintiff and her husband, including what was due Barley ; that this arrangement was made at the instance and with the full knowledge and consent of the president of the defendant bank, and that the bank knew that Barley had no interest in the land except as security for his claim ; that Barley's debt was afterward paid ; that all the proceedings in the foreclosure case were car-ried on by the bank under statements and assurances to the plaintiff that it was merely for the purpose of clearing the title and protecting her interests and that the property should still be held merely as security for her husband's debt ; that in these representations and transactions the officers of the bank acted fraudulently

and intended to cheat her out of her land. Other matters, not necessary to state, are also set up in the reply, which concludes with a prayer for an accounting and other relief.

At the trial a jury was impaneled to which special questions were submitted. In answer to these they found that the $1000 and $600 notes, with the mortgage securing them, were delivered to the bank solely as collateral security for the indebtedness of J. G. Woodrum, and without any other consideration, and did not represent any debt to the bank; that each quarter-section of the land was, on October 19, 1894, and also at the time of the trial, of the value of $2000; that the bank sold one quarter-section on November 9, 1892, to Boss for $2000; that the defendant advanced $2259.75 to pay off the prior mortgage; that the bank had received as interest on the $1000 note $289.95, and on the $600 note $133; that the value of the rent of the quarter-section not sold from the time defendant took possession of it to the trial was $375; that the land was deeded by the plaintiff to Barley to secure a grocery bill, and that he had no other interest in it; that the bank knew the exact interest of Barley in the land at the time of the foreclosure proceedings; that in all the proceedings relating to the property in controversy the plaintiff acted and relied on the advice of the officers of the bank; that the improvements made by the bank on the land were worth $78; that the plaintiff bid for the land at the foreclosure sale $675, but that defendant did not give credit for the amount of the bid, less expenses, on the note of the plaintiff and Woodrum. Motions were made by the defendant to set aside certain of the special findings and to render judgment in favor of the defendant on the answer. These motions were

both overruled, and judgment was entered in favor of the plaintiff for $565.90 and costs, and decreeing that she was the equitable owner of the unsold quarter-section of land, and directing the defendant to convey it to her. The defendant brings the case here alleging numerous errors.

*Omar Powell*, and *Fred. Powell*, for plaintiff in error.

*J. G. Lowe, J. W. Rector*, and *Charles Smith*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: To discuss at length all the assignments of error argued in the brief, and answer fully all the contentions of counsel for the plaintiff in error would extend this opinion to an unwarranted length. Such of the assignments only as are deemed most important will be mentioned. The first is that the court erred in refusing to require the plaintiff separately to state and number her causes of action. It is claimed that five separate causes of action were included in the petition, as follows: (1) For interest paid; (2) for rents and profits of the land; (3) to have the Boss contract assigned to plaintiff; (4) to recover the other quarter-section of land; (5) to cancel the judgment entered in the foreclosure case. Most of these supposed different causes of action are in no sense separate and distinct. The recovery of interest paid and of rents and profits of the land have somewhat the appearance of severable causes of action, yet these are directly connected with the single main transaction. The substance of the plaintiff's case was that she had given into the possession of the bank by way of mortgage her property; that through foreclosure proceedings the bank had obtained the legal title to

her land and taken the rents and profits thereof, and had also collected on these notes interest payments which it had no right to retain, and that it fraudulently retained her property so received after the debt of her husband, which it was given to secure, had been fully discharged from funds of his own. There really was but one cause of action, which was for a full accounting as to these transactions and to such relief as the equities of the case entitled her.

The demurrer to the amended petition was rightly overruled. Boss, Miller, Woodrum or any of the other judgment creditors was not a necessary party to the action. There was no impropriety in joining the several causes of action. The petition stated facts sufficient to constitute a cause of action. The action was not based on any parol trust agreement, void under the statute of frauds, but was one arising by implication of law from the transactions of the parties. Many of the averments of the petition, and some of those contained in the reply, were unnecessary and might properly have been stricken out as surplusage, as asked in the defendant's motion, but they appear to us to have been harmless. The question of prime importance in the case was whether the two notes executed by the plaintiff to the bank and secured by mortgage on her land represented an indebtedness which she owed to the bank for the land itself which she had bought from the bank, or whether, as claimed by her, these notes were delivered to and held by the bank solely as collateral security to debts of her husband which were primarily evidenced by other notes executed by him. If her claims were true, on payment of her husband's debt from his own funds, the bank would be by implication and intendment of law a trustee liable to account for all securities belonging

to her which it held, and it would still be so liable no matter what changes in the form or character of such securities had taken place. It must be observed, in order that there may be no misunderstanding of the principle here applied, that the contract entered into at the time the notes and mortgage were delivered to the bank was not such an one as the statute of frauds requires to be in writing. It was nothing more nor less than the ordinary transaction of pledging notes secured by mortgage for the debt of another. All liability on such notes would of course cease whenever the principal debt which they were given to secure was paid. The cases of *Ingham v. Burnell*, 31 Kan. 333, 2 Pac. 804, and *Gee v. Thrailkill*, 45 id. 173, 25 Pac. 588, much relied on by the plaintiff in error, are not in point. This is not a case of the conveyance of land upon a trust not evidenced by writing.

The objection to the petition based on the conclusiveness of the judgment in the foreclosure case as a final adjudication of the rights of the parties at first blush appears somewhat forceful, but on closer examination it will appear that at the time of the foreclosure, which was prior to the payment by J. G. Woodrum of his indebtedness to the bank, the plaintiff had no defense which she could have maintained in that case. The notes executed by her were due by their terms. The debt of her husband was unpaid. The bank had a right to resort to this collateral security for the payment of the principal debt and to a judgment foreclosing its mortgage. It also had the right to proceed to sell the mortgaged land. It had the right to appropriate the proceeds of the sale to the payment of J. G. Woodrum's debt. This, however, it did not do. Having bid in the land it saw fit to retain the land

itself as security rather than to reduce Woodrum's debt by the amount of the bid. This it did in accordance with the parol agreement set out in the petition. There was no wrong or impropriety in its doing so, but as a result of this change in the form of the security the bank did not come absolutely to own the plaintiff's land. It had paid nothing for it either to the plaintiff or by an allowance of credit on her husband's indebtedness. It held the land as it had originally held the notes and mortgage, as security, and only as security for the unpaid debt of the husband.

Much stress is laid on the statements in the petition with reference to the foreclosure judgment cutting off the liens of general judgment creditors. It is contended that the agreement with reference to this foreclosure, as set up in the petition, shows that a fraud on the rights of other creditors was intended, and that the judgment finally rendered in this case returns to the plaintiff her land freed and discharged from the claims of creditors, which constituted incumbrances on it prior to the foreclosure. This contention is without substance. The plaintiff having been the owner of the equitable title to the land from the time of the execution of the mortgage to the entry of the decree in this case, all judgments against her were liens on that equitable interest, and when, by the judgment in this case, the legal title was restored to her, the creditors were benefited rather than injured by having the evidence of her title to the land disclosed and made of record in such form that they could resort to it for the payment of their debts, freed and cleared from the apparent title of the bank.

The allegations of error based on the refusal of the court to require the plaintiff to elect whether she would stand on the alleged contract or the claim of fraud,

on the impaneling of the jury and admission and rejection of evidence, the bank's demurrer to the evidence, the instructions, and the special questions, the motions for judgment and for a new trial, present merely in different forms the substantial questions already determined. Some testimony was admitted which might with propriety have been excluded, but it does not appear of sufficient importance to warrant a reversal of the case.

After all, the substance of the controversy was as to whether the $1000 note and the $600 note represented a separate and distinct indebtedness which the bank had a right to collect or were given merely as collateral security to a debt of J. G. Woodrum's. This controversy was resolved by the jury on ample testimony in favor of the plaintiff. This conclusively settles the fundamental difference between the parties, and all else follows as a legal consequence of this finding taken in connection with the further finding that J. G. Woodrum had fully paid all his debt to the bank from his own funds. The bank still held Mrs. Woodrum's property, and she was entitled to have it restored to her, with the rents and profits resulting from its possession. She was also entitled to have the money judgment which had been entered against her in the foreclosure suit canceled, not on the theory that it was wrongfully or erroneously rendered in the first instance, but that the payment of her husband's debt operated as a payment of this judgment, which stood merely as security for it.

No material error appearing in the record the judgment is affirmed.