JOHN PAGE V. W. L. HARPER *et al.*

No. 14,468.   (84 Pac. 1024.)

SYLLABUS BY THE COURT.

SURETYSHIP—*Sale and Purchase of Securities by a Cosurety—Accounting for Profits.* Where one receives the assignment of promissory notes as security to himself and cosureties for an indebtedness of their principal and converts such notes into a judgment in his own name, and thereafter causes execution to be issued on such judgment and levied on certain real estate, and, at the sheriff's sale thereunder, buys the land at a nominal price and takes the sheriff's deed therefor in his own name, and thereafter, jointly with one of his cosureties, buys notes secured by a trust deed on such real estate and causes the land to be advertised and sold by the sheriff under such trust deed, and buys the land at the sheriff's sale and takes the sheriff's deed thereto jointly with such cosurety, and thereafter rents such real property, and finally sells the same to an innocent purchaser—when all this is done without the knowledge or assent of another cosurety, who has paid a part of the principal's debt, and without the knowledge or assent of the principal, the sureties so buying and selling the real estate are liable, in a suit for an accounting, to account to their principal and their cosurety for the profits of the entire transaction, including the buying, renting, and selling.

Error from Cherokee district court; WILLIAM B. GLASSE, judge. Opinion filed March 10, 1906. Reversed.

STATEMENT.

IN 1893 defendant in error W. L. Harper, who is also a cross-petitioner in error, became the agent of the Ætna Powder Company at Galena, Kan., probably to sell the goods of the company on commission. At any rate Harper gave a bond, with Page, Leeman and Prehm as his sureties, conditioned that he would pay the company all the moneys which might become due to it from him as agent. About two years thereafter Harper had become indebted to the company in the sum of $3791.40, and the company called upon his sureties to settle the debt, which they did on July 25,

1895, by giving their four joint promissory notes for $947.85 each, to become due in six, twelve, eighteen and twenty-four months, respectively, and bearing interest at six per cent. from date.

To indemnify his sureties Harper assigned to one of them (Leeman) a large number of notes and accounts, under an agreement that the same were to be collected by Leeman as far as possible and the proceeds applied to the payment of Harper's debt to the powder company, the remainder, if any, to be returned to Harper. Harper also secured the indebtedness by a real-estate mortgage to Page, another of the sureties. The mortgaged land was afterward sold and the proceeds properly applied, as to which there is no controversy.

Leeman was able to make but slow progress in the collection of the notes and accounts, and the sureties had in the first instance to pay the greater part of the indebtedness, which was afterward repaid, in part, from the proceeds of the sale of the mortgaged land. Page was unable to meet his portion of some of the notes as they became due, but later he paid to Leeman and Prehm the portion they had advanced for him.

Among the claims assigned by Harper to Leeman to indemnify the sureties were some notes against one Harden, who resided in Missouri, and these were sued upon by Leeman and judgment was procured against Harden for something over $1000. Leeman caused execution to be issued thereon and to be levied on a business lot and building in Carterville, Mo. At the sheriff's sale Leeman bought the property for $10, and took the sheriff's deed in his own name. Leeman then took his cosurety Prehm into the deal, and together they bought some notes for about $1500 which were secured by a trust deed on this property, caused the property to be advertised and sold under the trust deed, bid it in, and took a sheriff's deed in their own names jointly. Thereafter they rented the property, receiv-

ing, it is claimed, about $700 as rent, and then sold it for about $5300.

This suit was brought by Page against his cosureties, Leeman and Prehm, for an accounting of the proceeds of the Harden judgment and the Carterville property. Harper, being made a party defendant, filed a cross-petition for the same purpose.

The case was tried without a jury and judgment was rendered in favor of Page for $59.07, being his portion of $300, less some costs or expenses, which had been received by Leeman and Prehm from the sale of the balance of the Harden judgment to Mrs. Harden. Judgment was rendered against Harper, and the costs were divided. Page brings the case here, and Harper files a cross-petition in error.

*Sapp & Wilson,* for plaintiff in error.

*A. L. Majors,* for cross-petitioner in error, W. L. Harper. *Sapp & Brown,* for defendants in error, except W. L. Harper.

The opinion of the court was delivered by

SMITH, J.:  Eleven assignments of error are made by the plaintiff in error, Page, and thirteen by the cross-petitioner in error, Harper.  There is, however, practically only one question presented for consideration, viz., Should Leeman and Prehm account to Harper and Page for the profits received from the Harden property, including the rents and the amount received from the sale of the property, deducting expenses and amounts paid in perfecting title?  The issue on this question was fairly presented by the petition and cross-petition, which alleged the facts as above recited.  To these pleadings the defendants Leeman and Prehm answered by general denial only.

The relation of the several parties as above recited is established by uncontroverted evidence, and is admitted by the brief of defendants in error, but they say there was no evidence that Leeman agreed to act

as trustee for Harper and Page in the purchase at the execution sale, or that Leeman and Prehm agreed to act as such trustees in the purchase of the trust deed and the notes secured thereby or in purchasing the property at the sale had thereunder. No such agreement was necessary. Their admitted former relation to their principal and cosurety, and to the judgment debt, on which it was their duty to realize as much as possible, made Leeman, at least, such trustee, and Prehm also if, as it is to be presumed, he knew all the facts.

When the owner of a judgment or mortgage lien on land, or one who represents such owner, bids at a sale ordered to satisfy such lien, the very fact that the one who makes such bid may raise it to the entire amount of such lien without the investment of an additional dollar often gives such bidder a decided advantage over other bidders, who must back their bids with their cash; especially is this true where the lien or the lien and prior liens approximate or exceed the value of the property. Thus other bidders are deterred from competing in the uneven contest and often refuse to bid at all. It is unconscionable that one who stands in the place of the owner, as Leeman did in this case, the judgment being in his name, should be allowed to take such advantage of his position to the detriment of his principal, and probably to the detriment of the judgment debtor also. (*Case v. Carroll*, 35 N. Y. 385, 388; 1 Beach, Trusts & Trustees, § 100.)

That Leeman held the lien in trust for himself, his cosureties and Harper will not be questioned. He held the property, which he acquired to an advantage, through his relation to such lien; and must hold the same in the same way he held the lien. (*Winkfield v. Brinkman*, 21 Kan. 682.) The trust in the land arises by implication of law from the facts and circumstances of the case. (*Bank v. Woodrum*, 60 Kan. 34, 55 Pac. 330.) In an analogous situation it is said:

"The *cestuis que trust* may call him to an account

. . . having an option to make him replace it [the property—in this case to set aside the sale of the land] or, if it is for their benefit to affirm his [their] conduct and take what he has sold it for, they may take that and charge him with legal interest." (1 Beach, Trusts & Trustees, § 184.)

The court excluded evidence of the rents and price received on the sale of the property, and sustained a demurrer to the evidence of the cross-petitioner, in opposition to the views herein expressed. The judgment as to both the plaintiff in error and the cross-petitioner in error is reversed, and a new trial is awarded in accordance with the principles expressed in this opinion.

All the Justices concurring.