Hicks v. Sage.

---

No. 21,916.

REESE V. HICKS, *Appellee,* v. SAMUEL SAGE, as Administrator of the Estate of A. B. SAFFELL, Deceased, *Appellant,* HARRY H. OLDEN, as Guardian, etc., EUGENE SAFFELL, et al., *Appellees.*

SYLLABUS BY THE COURT.

1. SALE OF LAND—*Under Order of Probate Court—Injunction.* On an appeal from a final judgment granting a permanent injunction against the sale of land under order of the probate court to pay the debts of a decedent whose estate is being administered, it is not material to inquire whether there was error or irregularity in the granting of a restraining order or temporary injunction.

2. GUARDIAN AND WARD—*Investment of Ward's Money—Trust in Land Created.* The competent evidence is held to have been sufficient to support a finding that money belonging to his wards was used by a guardian in paying for land purchased by him, which thereby became impressed with a trust in their favor.

3. HOMESTEAD—*Exempt from Claims of Creditors.* Property occupied at the time of his death as the homestead of its owner and his children remains exempt from the claims of his creditors so long as it continues to be so occupied by any of the children, although by his will the title passes to them in unequal shares.

4. SAME. Such exemption is not affected by the fact that the will contains a general clause directing the payment of his debts out of his estate.

5. SAME — *Farm Occupied as Homestead — Temporary Absence.* The evidence is held to support a finding that the property in question was in the eye of the law still occupied as a homestead, notwithstanding the temporary absence of all the children therefrom.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed May 10, 1919. Affirmed.

*Chester Leinbach,* of Onaga, and *J. E. Addington,* of Topeka, for the appellant.

*S. H. Allen, Otis S. Allen, George S. Allen,* and *Otis E. Hungate,* all of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: On February 25, 1914, the wife of A. B. Saffell died, holding a life insurance policy for $1,000 in which their four minor children — three sons and one daughter — were named as beneficiaries. Saffell was appointed guardian of the children. On March 26, 1914, he collected the insurance, amounting to $985.18. On September 3, 1915, Saffell died testate. An administrator was appointed, and claims against his estate amounting to some $2,800 were presented. An order was made by the probate court for the sale of a quarter section of farm land, the title to which stood in the name of Saffell at the time of his death, for the payment of debts. On December 8, 1916, Reese V. Hicks, the surety on the guardian's bond given by Saffell, brought an action against the administrator, making Saffell's children defendants, asking an injunction against the sale of the land on the ground that Saffell had purchased it while guardian, and had used the insurance money referred to in part payment of the purchase price. A restraining order or temporary injunction was allowed at the commencement of the action. An answer was filed in behalf of the children by a guardian for the suit, likewise asking

an injunction against the sale of the land for the same reason, and also because it was exempt as a homestead. Upon a trial on the merits, the court found that the insurance money had been used in the purchase of the land, which thereby became impressed with a trust in favor of the children, and that the land had been the family homestead at the time of Saffell's death, and had not been abandoned as such by the children. Judgment was rendered discharging the plaintiff from liability on the guardian's bond, and enjoining the sale of the land, without prejudice, however, to the rights of creditors whenever it should cease to be occupied as the homestead of the children. The administrator appeals.

1. The appellant contends that in allowing the restraining order and overruling a demurrer to the petition error was committed for various reasons, one of them being that the plaintiff had no standing to ask the injunction. The children were proper parties to attack the sale, and did so, thus giving an additional basis for the final judgment. In such a case as this, if the permanent injunction was properly granted, any error or irregularity in the making of the preliminary order is not important. (*Freeland v. Stillman*, 49 Kan. 197, 206, 30 Pac. 235; *Kerz v. Galena Water Co.*, 139 Ill. App. 598; *Rothenburg v. Vierath*, 87 Md. 634.)

2. Upon the merits of the case the appellant asserts that testimony given by the plaintiff and two of Saffell's sons, regarding the use of the insurance money in buying the land, was incompetent under the rule regarding communications with persons since deceased, and that the other evidence had no tendency to prove that the money went into the land. The admission of the incompetent evidence is not a ground of reversal if there was competent evidence to support the decision. It was shown that Saffell bought the land on March 13, 1914, for $4,000, assuming a mortgage for $1,700, and interest, and paying the remainder of the price at once. On June 4, 1914, he paid off the mortgage, amounting to $1,746.75, with a check on the Berryton bank, in which he had deposited the insurance money on March 26, this payment reducing his account to $730.80. At his death he had only about $124 in money or on deposit. The guardian never made any accounting to the children in regard to the receipt of the $985.18. The

agent who negotiated the sale testified that Saffell told him he was buying the land with money belonging to his wife, and that it was at her request that he was investing it for the benefit of the children. He was asked whether Saffell was, at the time of the purchase of the land, expecting to be appointed guardian for the children in a few days that he might collect some insurance on a policy his wife held, and answered: "I think there was something said about that, that there was some money coming from somewhere." The plaintiff's wife testified that Saffell told her he was going to use the insurance money for the farm he was buying—that he saw no reason why he should not invest the money and provide a home for the children. Disregarding entirely the testimony of the plaintiff and the sons of Saffell, we think the evidence sufficient to support the finding that the insurance money was used in paying off the mortgage on the land as a part of the purchase price, thus warranting the declaration of a trust in favor of the children.

3. The will of Saffell gave to his four children all his "household furniture, farm implements, tools, live stock and crops," and "any money which may be left after paying all just debts and expenses," and also "the use, improvement and income" of his "dwelling house, land and its appurtenances"— consisting of the farm already referred to. The residue of his estate was directed to be divided among his children, the daughter to receive two-fifths and each of the three sons one-fifth.

The farm was occupied until his death by Saffell and his children. If he had died intestate it would have been exempt from sale in payment of his debts so long as it continued to be occupied by any of the family. (*Kohler v. Gray*, 102 Kan. 878, 172 Pac. 25.) The fact that the title passed according to the direction of the will, instead of according to the direction of the statute of descents and distributions, does not change the rule. It has been decided that a will is not a conveyance in such sense that a homestead thereby devised is free from the claims of the testator's creditors regardless of its occupancy. (*Postlethwaite v. Edson*, 102 Kan. 619, 171 Pac. 769.) That decision is based on the view that by the making of a will the testator does not part with the control of the property, but

that at his death the title passes by reason of his death, and essentially by operation of law, whether it goes to the devisee named in the will or to heirs indicated by the statute concerning intestacy. It accords with this view to hold that when the ownership vests in a member of the family in virtue of the provisions of a will, the homestead exemption survives to the same extent as though title had passed to the same person by inheritance. The exemption of a homestead with respect to the debts of a husband is not affected by the fact that his widow elects to take under his will. (*Cross v. Benson,* 68 Kan. 495, 506, 75 Pac. 558.) The circumstance that in this case by the terms of the will the fee to the farm vested in the children in unequal shares does not in our judgment affect the matter. We conclude that the land cannot be sold to pay the father's debts, so long as any member of his family continues to live upon it.

4. The appellant urges, however, that a different rule should obtain here because of a provision of the will reading: "My will is that all of my just debts and funeral expenses shall, by my executors hereinafter named, be paid out of my estate, as soon after my decease as shall by them be found convenient." The argument is that the testator thereby indicated that he wished the farm to be held subject to the payment of his debts. We do not regard that inference as at all reasonable. A mere general direction for the payment of debts is not construed as a waiver of exemption. To have that effect, the language employed must be "unequivocal and imperative." (*Cross v. Benson,* supra.) The words quoted fall far short of that requirement. If the matter were otherwise doubtful, it might well be inferred that the testator had specifically in mind the continued occupancy of the farm as a homestead, from the fact that he gave its use and income to his children without apportionment, while devising his daughter a double share in the fee. The clause by which he disposed of his personalty showed, too, that he assumed that his debts could be met from that class of property, if not from such money as would be on hand at his death.

5. The daughter was thirteen years old at the time of the trial. Shortly after her mother's death she was taken to the home, in New Jersey, of her uncle, the plaintiff, who kept her

until about six months before the trial, since which time she has been with another uncle, in Ohio. The record is entirely silent concerning any plans for the future that have been made for her, or that she has made for herself. The fair inference is that her stay with her uncles was in pursuance of a mere temporary arrangement. It is clear that at one time she was a resident upon the farm in question. There is no evidence having any reasonable tendency to show that she has ever acquired a permanent domicile elsewhere, and until that is done, her legal residence remains where it was once established. An intention to abandon her homestead right, to her manifest disadvantage, is not lightly to be imputed to her —certainly not without some substantial evidence. (*Shirack v. Shirack,* 44 Kan. 653, 24 Pac. 1107.) The three sons were living on the farm with their father at the time of his death. The youngest, then about fourteen years old, left after four or five months and went to live with his grandfather in Virginia, where he joined the army. There is likewise no substantial evidence of a purpose on his part to effect a permanent change of residence. The two older brothers, aged 21 and 20 at the time of the trial, remained on the farm for some eight months after their father's death, when the administrator took possession of it. They left, as one of them expressed it, "because they run us off . . . we had to get out, they told us they wanted the farm, the administrator." This witness added: "We expected to farm the next summer, we couldn't farm without any personal property, the personal property being sold, what was we going to do, we had to leave." One of the older brothers has since married. It is not necessary to consider the effect of that circumstance on his homestead interest. The evidence justified the finding that none of the other three children had lost their residence on the farm. Their mere temporary absence did not constitute an abandonment, nor affect their right to hold the property exempt from their father's debts. (*Koehler v. Gray,* 102 Kan. 878, 172 Pac. 25.)

In the brief of the appellees, a theory is advanced that the children are the owners of the farm fully discharged of all claims of creditors. The judgment, however, which we approve, charges the land with a trust in favor of the children

to the extent of the $985.18 of their money, which formed a part of the purchase price, and otherwise leaves it subject to the claims of creditors whenever it shall cease to be occupied as a homestead by at least one of the children.

The judgment is affirmed.