No. 27,892.

Anna Alumbaugh et al., *Appellants*, v. Blair Hedges, as Executor, etc., et al., *Appellees.*

(265 Pac. 50.)

SYLLABUS BY THE COURT.

1. Executors and Administrators—*Traffic in Estate for Private Advantage.* Rule followed that executors and administrators may not traffic to their own private advantage in estates toward which they have any official responsibility.

2. Same—*Purchase of Widow's Interest by Executor—Right to Remaining Heirs.* Under the circumstances set out in the opinion, the interest of a widow in the real and personal estate of a testator which was privately purchased by the executor of her husband's estate was impressed with a trust in behalf of plaintiff heirs, devisees and distributees of the estate; and the executor's contention that he had a right to purchase the widow's share on his individual account and for his private profit, and that such purchase was no concern of the plaintiffs, cannot be sustained.

Appeal from Edwards district court; Roscoe H. Wilson, judge. Opinion filed March 10, 1928. Reversed.

*F. Dumont Smith, Eustace Smith* and *Arthur T. Symns,* all of Hutchinson, for the appellants.

*A. L. Moffat,* of Kinsley, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to compel disclosure of a secret agreement whereby the executor and ancillary administrator acquired an interest in the estate under his charge, and to impress that interest with a trust in behalf of plaintiffs as heirs of that estate, and for other equitable relief.

Briefly the facts were these: On September 22, 1914, Konstantin Schwarz, a pioneer citizen of Edwards county, then a widower with a grown son and three grown daughters, made a will disposing of his property and naming his son-in-law, Blair Hedges, as his executor. By its terms his eldest daughter, Mrs. Helen Harp, of Denver, was given the sum of five dollars. Another daughter, Mrs. Annie Alumbaugh, of Los Angeles, was given a life interest in 440 acres of

Agency, 2 C. J. p. 694 n. 33. Contracts, 13 C. J. p. 415 n. 44. Executors and Administrators, 24 C. J. pp. 114 n. 39, 230 n. 80; 11 R. C. L. 358. Fiduciary, 25 C. J. p. 1120 n. 73.

Edwards county land, with remainder to her children if any she had, otherwise to the children of her sister Emma Hedges. Some town lots in Kansas City, Mo., were also devised in fee simple to Annie. To his son Frederick Schwarz, of Offerle, there was a devise of a life estate in forty acres in Edwards county, with remainder to his children. To his third daughter, Mrs. Emma Hedges, wife of Blair Hedges, a life estate was devised in all the land the testator owned in section 17, township 25, range 20, in Edwards county, with remainder to her children. The residuary estate was conditionally devised thus: One-third to Annie Alumbaugh; one-third to Emma Hedges; one-third to the children of Emma Hedges.

After making this will, Konstantin removed to California, married there, and died a resident of that state on September 3, 1925. He left a widow, and the litigants in this action became concerned about her interest in Konstantin's estate. On October 14, 1925, the defendant, Blair Hedges, wrote to Mrs. Alumbaugh asking her to inquire about the California law relating to the probate of the will, and suggesting the possibility of probating it in Kansas on the theory that the testator was a resident of Edwards county at his death. The letter continues:

"I . . . may come and contest it, so find out what you can and let me know.

"In regard to the will, some says it will hold and some says it is no good, so I do[n't] know what about it; as for us we are willing to divide equally. . . .

"Did you ever talk to the widow what she would take for her interest in this property here; probably we could pay her so much each year as long as she lives, then she would not clame enny of this here."

Later the same year defendant Blair Hedges and Emma Hedges and Frederick Schwarz had a conversation about breaking the will. Mr. and Mrs. Hedges said they were willing to divide the property equally. Hedges and Schwarz went to California about the middle of December to see if they could come to some agreement with Mrs. Katherine Schwarz, widow of the testator. Together with Annie Alumbaugh, they called on the widow and she referred them to her lawyer. The latter advised them that if satisfactory provision was made for the widow's maintenance, her interest in the property would be returned to the Kansas heirs at her death "by will or other method." Frederick Schwarz made an offer of $5,000, which was declined. The widow's attorney suggested $15,000. Hedges said that was too much, and no agreement was reached at that time. While in California, Hedges and Annie had a conversation about how the

money was to be raised if they effected a settlement with the widow. According to Annie's testimony, it was agreed by Hedges, Frederick and herself that if they could settle with the widow they would share equally. Hedges admitted that he had talked with Frederick Schwarz about breaking the will.

"I told him as far as I was concerned, me and my wife, we would be willing to, if the law would uphold it with the minor heirs. . . .

"Q. What was said about the widow's half interest? A. Well, when we went out there it was understood between us that we would go out, and if we bought the widow out we would share equally in the widow's part. . . . I made him [widow's attorney] an offer of $10,000 and he still refused that. . . . Told him all right; we guessed we would go home and probate the will. . . . Came back a day or two after that."

Shortly after his return to Kansas, Hedges made a contract with the widow whereby her interest in the Kansas estate passed to Hedges and wife personally. By its terms Hedges and wife agreed that at their own expense they would institute proper court proceedings in Kansas and procure a decree setting over to the widow one-half of all the real and personal estate of Konstantin Schwarz; they stipulated that the widow need not employ counsel to protect her interest; that Hedges and wife would attend to her interest; that partition proceedings should be instituted and prosecuted to final decree, and that they would promptly forward to her copies of all pleadings and papers filed in such proceedings; that as soon as a final decree should be procured Hedges and wife would purchase from the widow "all her right, title and interest in and to the property, real and personal, which may be set over to party of the second part [widow] under this decree." The consideration was $3,000 in cash and a deposit of $10,000 to be placed with the Guaranty Branch of the Security Trust and Savings Bank of Los Angeles, with a declaration of trust pertaining thereto whereby the net income of such deposit should be paid to the widow during her lifetime and at her death this deposit or the securities in which it might then be invested should be returned to Hedges and wife. By the terms of the agreement, also, Hedges and wife obligated themselves to pay for the preparation of the trust agreement, and to pay the expenses of embalming, shipping and burying the testator's body. The widow agreed that as soon as the estate was partitioned, and upon full compliance with the agreement by Hedges and wife she would execute deeds to all her interest in the Edwards county lands (described). And—

"Will also assign and transfer all her interest in and to all personal property

of every kind and nature to which she is or may be entitled to as widow of said Konstantin Schwarz, deceased, in the state of Kansas, under the laws of the state of Kansas."

The above agreement was executed and dated on January 16, 1926. Two weeks prior thereto, on December 30, 1925, defendant Hedges had filed in the probate court of Edwards county an application for the probate of the will of Konstantin and for his own appointment as executor. On February 17, the will was probated, and on February 27, Hedges was appointed executor and qualified. On March 29 Hedges filed petition for the allotment of the widow's allowance, pursuant to which 520 acres of the Schwarz lands valued at $25,000 were allotted to her in severalty, and on April 12 the probate court approved the allotment. The widow's deed conveying the allotted lands to Hedges and wife was executed on April 19. During the pendency of the probate and allotment proceedings, Hedges made a partial disclosure to Annie and Frederick of the acquisition of the widow's interest. He told Annie that she could have one tract of land at a certain sum (presumably its cost) and Frederick could have another on similar terms. He did not tell them the details of the acquisition nor did he apprise them of the reversionary features of the $10,000 deposit.

On March 7, 1926, he wrote to Annie:

"As Emma is writing I will add a few lines. You want to know what it was that we signed; will say it was a contract with the widow for her one-half of the property here in Kans.; and you wanted to know where you came in; will say that you will get your shear of it; but in regard to the will it go as the law says. Now in regard to the widow's one-half, I am going to sell it as soon as I can after it is settled, and you will get all that is yours, as I do not want to invest $4,000 or $5,000 in 160 of land; so if you want your shair of the land you will haft to have your shair of the money to pay for it. If you want to sell your shair, I do not think you will need enny money, as I think I can sell it right away. Now this contract with the widow is for $13,000; she is to give good deed to the land before she gets her money. Now you had better get Fred to look after your interest here, as I cannot, as I have got all I can do as it is.          BLAIR HEDGES."

At the trial Hedges testified:

"I told him [Frederick] 'if you want any of this you will have to raise your part of the money. I won't raise it.'

"What, if anything, was said about the $10,000 trust fund? A. I don't know that anything was said about it. I told him that there was $10,000 coming back, but don't think I told him who it was coming back to."

Alumbaugh v. Hedges.

On August 23, 1926, this action was begun by Annie and Frederick; Mrs. Helen Harp was a nominal party for a time, but eventually dropped out of the litigation. Hedges and wife were made defendants. Plaintiffs' petition set out the facts in so far as they were apprised of them. Defendants answered at length, setting out a copy of the contract whereby they acquired the widow's interest in the real and personal estate of Konstantin. The answer contained certain admissions and denials of little importance, and concluded with a prayer that plaintiffs take nothing by their action, and in the alternative—

"That in event the court finds that the plaintiffs or any of them are entitled to any of the benefits of the contract executed between the defendants and Katherine Schwarz, that the said plaintiffs be required to pay to the defendants their *pro rata* part of the expenses and the purchase price of said land."

On the issues joined the cause was tried by the court. The evidence was as outlined above, together with the depositions of the California widow and her attorney, but these depositions disclosed nothing of importance on the principal legal question involved in this review.

The trial court gave judgment for defendants. Plaintiffs appeal, complaining that the court ignored the general rule of law that executors, administrators, guardians, trustees, and functionaries of that general character, may not traffic to their own private advantage in estates or properties towards which they have any official or moral responsibility. This rule is as much a principle of ethics and of practical honesty as it is of law. The moral philosophy which underlies the rule was comprehensively treated in *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, in which is included a quotation from *Staats v. Bergen*, 17 N. J. Eq. 554, which deserves to be repeated:

" 'So jealous is the law upon this point, that a trustee may not put himself in a position in which to be honest must be a strain upon him.' " (p. 619.)

In *Judy & Gilbert v. Railway Co.*, 111 Kan. 46, 48, 205 Pac. 1116, it was said:

"A fundamental principle of law known by every lawyer is that an administrator of an estate cannot contract, for his personal advantage, concerning any matter connected with the estate. Such contracts are unenforceable. (1 Woerner's American Law of Administration, 2d ed., § 391; 2 C. J. 694; 13 C. J. 415; 25 C. J. 1120; *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24.)"

Other cases recognizing this principle are: *Phillips v. Love*, 57

Kan. 828, 833, 48 Pac. 142; *Page v. Harper,* 73 Kan. 229, 84 Pac.
1024; *Leeman v. Page,* 79 Kan. 479, 100 Pac. 504; *Niblack v. Knox,*
101 Kan. 440, 167 Pac. 741; *Clingman v. Hill,* 104 Kan. 145, 178 Pac.
243; id. 113 Kan. 632, 215 Pac. 1013; *Hicks v. Sage,* 104 Kan. 723,
180 Pac. 780; *Sowers v. Pollock,* 112 Kan. 599, 212 Pac. 103; *Rossman, Executor, v. Christensen,* 117 Kan. 41, 230 Pac. 72.

Counsel for defendants concede the correctness of the rule of law,
but contend that it has no application to the case at bar. Why
not? It is suggested that while Hedges was appointed and designated executor, he was in fact an ancillary administrator with the
will of a California citizen annexed. Be it so. The rule is as rigorous against administrators of every sort as it is against executors.
Hedges' application to probate the will of Konstantin and for his
own appointment as executor, or as ancillary administrator, was
on file for two weeks when he consummated his private bargain
with the widow for her half of the estate; and when he was appointed and qualified his official relation to the estate became effective as of the date the will was filed for probate, December 30,
1925. He was to all intents executor and administrator at the time
he contracted for the widow's interest in the property. When he
caused the widow's share to be set apart to her, he knew, as plaintiffs did not, that the more generous to the widow that allotment
might be, the more it would redound to the private advantage of himself and wife. It is argued that the contract between defendants and
the widow was not shown to be a secret agreement as alleged, nor to
be vicious if secret. All the evidence was to the contrary, but its invalidity as against the plaintiffs did not depend on its being secret,
but because it grossly offended against the rule of law which forbids
public functionaries or private fiduciaries to bargain for their private
advantage in relation to property toward which they hold any legal
or moral responsibility. The point is made that official notice of
the time set for making the widow's allotment was duly given. No
doubt; but that notice gave no hint of defendants' private interest
in it. And quite naturally, since Hedges was officially appointed and
being paid for looking after the interests of all concerned, the heirs
and devisees went about their own concerns in confidence that all
would be done in order and in good conscience. Another suggestion
is that Hedges offered to let plaintiffs have part of the lands allotted
to the widow and privately acquired by himself and wife if they

would advance their share of the purchase money. But he grossly misled them as to the cost of those lands. His own testimony reads:

"What, if anything, was said about the $10,000 trust fund? A. I don't know that anything was said about it. I told him [Frederick] that there was $10,000 coming back, but don't think I told him who it was coming back to."

He was even less candid in his letter to Mrs. Alumbaugh. To her he wrote:

"Now in regard to the widow's one-half . . . you will get all that is yours . . . . If you want to sell your shair I do not think you will need enny money, as I think I can sell it right away. Now, this contract with the widow is for $13,000."

Another point urged in defendants' behalf is that the executor was not appointed to handle the real estate and had nothing to do with it, as the personal estate was ample to satisfy all claims against it, including taxes and expenses of administration. Counsel for defendants cite authorities to the effect that in such a situation an executor may purchase on his own private account the interest of heirs in real estate not needed for the payment of debts. Typical of this doctrine is the statement in 24 C. J. 229, 230, viz.:

"While an executor or administrator may, if the transaction is fair and the consideration adequate, purchase the interest of a legatee or distributee, such a transaction should be closely scrutinized, for the relation of the parties makes such a dealing suspicious and imposes on the representative the burden of showing that no advantage has been taken by him; and if the transaction is tainted with fraud or imposition it will not be allowed to stand. In any event, however, where the personal representative purchases the interest of a particular heir or legatee, only the vendor can object to the transaction, and the other heirs or legatees have no right to object."

We assent to so much of this doctrine as declares that such a purchase should be closely scrutinized, but decline to give countenance to the latter part which declares that heirs and legatees other than the vendor could not object to the transaction. In a case like the one at bar the peculiar vice in the transaction did not concern the vendor (the widow), but inhered in the duplicity practiced on plaintiffs and the other beneficiaries of the will whose devises and bequests were directly affected by the extent and value of whatever allotment was made to the widow, and which had already been contracted for by the executor to the private advantage of himself and wife.

Touching the point that the private contract of the executor was

without vice because the personal estate was sufficient to care for all charges, and that in consequence the executor had nothing to do with the realty, it is sufficient to say that by the literal terms of the identical contract the executor bargained for and privately acquired all the widow's interest in the personal estate. And as to that part of the estate, there is no shadow of doubt that its private acquisition by the executor was illegal. Cases there are where a contract, one part valid and one void, has been upheld on the valid part and rejected on the other (*Henshaw v. Smith,* 102 Kan. 599, 171 Pac. 616), but this contract is not entitled to such lenient treatment.

Appellees invoke the rule that this court is concluded by the trial court's findings of fact. It is. So far as the plaintiffs' case rested on testimony which the trial court was at liberty to disbelieve, we are concluded. But this case is not controlled by disputed facts. So far as the controlling facts are concerned, they were developed by record and documentary evidence and by the defendant executor's own testimony, and the pertinent law of the case is what we have outlined above.

A final point is urged in behalf of the defendant Emma Hedges, who as a private citizen, having no official concern with her father's estate, could lawfully make a private bargain for her stepmother's share of it. She could, but she did not. The interest she acquired was freighted with the vice which inhered in the bargain made in her behalf by her husband, the executor.

How do these conclusions affect this case? Manifestly the judgment of the trial court cannot stand. In some equitable fashion the executor's bargain with the widow must be dealt with as made for the benefit of all concerned. But as this matter has not been briefed, we purposely refrain from passing on the point whether the contract shall exclusively inure to the benefit of the litigants herein, or to the heirs of Konstantin, or to all the beneficiaries of his will. Primarily that problem is one for the solution of the trial court, as it may be advised.

The judgment is reversed, and the cause remanded for further proceedings consistent herewith.