No. 27,258.

THE FARMERS STATE BANK OF INMAN, *Appellant*, v. THE BANK OF INMAN, *Appellee*.

### SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGES—*Rights of Junior Mortgagee Not Giving Notice*. A mortgagee of personal property is under no obligation to so handle the property as to protect the rights of a junior mortgagee of the same property unless and until he has notice of such junior mortgage.

2. SAME—*Retention of Possession With Power to Sell—Parol Agreement— Validity as Against Junior Mortgagee Not Given Notice*. A parol agreement between a mortgagee and a mortgagor of personal property, by which the mortgagor may sell a part of the mortgaged property and with the proceeds purchase other property of like kind, to be secured by the mortgage in lieu of that sold, is not void as between the parties, nor as to a junior mortgagee when the senior mortgagee has no actual knowledge of the existence of the junior mortgage.

Appeal from McPherson district court; WILLIAM G. FAIRCHILD, judge. Opinion filed April 9, 1927. Affirmed.

*James Cassler*, of McPherson, *C. M. Williams, D. C. Martindell* and *W. D. P. Carey*, all of Hutchinson, for the appellant.

*G. F. Grattan*, of McPherson, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Plaintiff and defendant are separate banking corporations in the same city. Each had a mortgage on the cattle of John Carmichael. Plaintiff's mortgage specifically recited that it was subject to a prior mortgage of $3,500 in favor of defendant. Defendant foreclosed its mortgage by taking possession of the cattle, advertising them for sale, and selling them and applying the proceeds upon the debt due it. Plaintiff sued defendant for damages, for an accounting of the proceeds, and disposition of the mortgaged

Chattel Mortgages, 11 C. J. pp. 518 n. 33 new, 571 n. 57, 572 n. 68; 5 R. C. L. 444. Estoppel, 21 C. J. p. 1112 n. 40.

cattle. There was a judgment for defendant, and the plaintiff has appealed.

Briefly, the facts are substantially as follows: John Carmichael was engaged in the cattle business. He was indebted to defendant, and secured such indebtedness by mortgages on his cattle. The first mortgage necessary to be noted was dated July 12, 1922, and covered 146 head of cattle described by class, quality and number as to each class, and being all the cattle then owned by Carmichael. It seemed that Carmichael did some trading—bought, sold and shipped cattle. Sometimes he would buy in the country, bring cattle to his place, ship some of those purchased with some he previously had, and keep some of the cattle purchased with his herd. On two or three occasions, at least, he bought at the stockyards at Wichita and took the cattle to his place and later shipped some or all of those and perhaps some he previously had at his place. So the individual cattle he had at his place were changed from time to time. The manager of defendant bank knew of this practice and had a parol agreement with Carmichael that he might do this, and that the bank would honor his check for cattle purchased; that as such cattle were sold the proceeds should be returned to the bank to take care of such checks, and that the cattle purchased and retained at his place should be regarded as having been purchased with the bank's funds, or be regarded as secured by the mortgage in lieu of mortgaged cattle sold. While there was never a complete change of the identity of all the cattle mortgaged, there were changes made from time to time. On November 6, 1922, the indebtedness was renewed by a new note and mortgage covering 165 head of cattle, specifically described. On February 6, 1923, the indebtedness was renewed and increased to $3,500 and a new note and mortgage given covering 195 head of cattle, specifically described. On August 8, 1923, this indebtedness was renewed, a new note and mortgage given covering 181 head of cattle, specifically described. Each of these mortgages was properly recorded. Each of these successive mortgages was considered as a renewal of a former indebtedness and mortgage and to be in accordance with the parol agreement of the parties.

On July 20, 1923, Carmichael gave to the plaintiff bank (as security for an old indebtedness) a mortgage upon 75 acres of growing corn, four mules and two horses and "one hundred eighty head of mixed cattle (steers, cows, heifers and calves. All of the above stock is being kept in either McPherson, Rice, or Reno county)

subject to first mortgage of $3,500 in favor of Bank of Inman." This mortgage was filed for record, but no notice was given to the defendant bank or its officers of this mortgage, and they had no actual knowledge of it until September 7, 1923. About August 8, 1923, Carmichael shipped 63 head of cattle and sold them at the stockyards at Kansas City. Out of the net proceeds the commission company took $300 to pay a note Carmichael owed, and remitted the balance, $1,647.95, to the defendant bank to the credit of Carmichael. Some of the cattle shipped were cattle Carmichael had on his place, and some were cattle he had bought and paid for by checks on defendant bank under his parol agreement with that bank. With the proceeds of this shipment Carmichael bought 38 head of cattle at the stockyards at Wichita, for which he paid $997.89. These cattle were taken to his place. It is difficult from the record to get the exact number of cattle exchanged by the various purchases and sales made by Carmichael; but perhaps that is not important. On September 7 the representative of plaintiff bank inquired of the representative of defendant bank about the proceeds of the cattle shipped to Kansas City and the balance due on the mortgage to defendant bank, and then informed defendant of plaintiff's mortgage. Defendant immediately sent for Carmichael and inquired whether he had given the mortgage to plaintiff. Carmichael said he had, and that plaintiff had agreed to take up defendant's mortgage should it become necessary. Defendant informed Carmichael that it could not carry its mortgage in that condition. On that day Carmichael gave defendant a check for $450, drawn on his account in defendant bank, to apply upon his note. It was understood that the balance of his account should be so applied when checks given for cattle then outstanding were paid. This balance, $219.81, was so applied. Carmichael stated he thought he could get the money in a few days to pay defendant. On September 14, payment not having been made, defendant took possession of the Carmichael cattle, advertised them, and sold them, and applied the proceeds upon its debt. The sum was not sufficient to pay defendant in full. Thereafter plaintiff brought this action, with the result as above stated.

Appellant argues two questions: *First,* Did the parol agreement as to buying and selling cattle between defendant and Carmichael render defendant's mortgage void as to plaintiff? *Second,* Did the arrangement between defendant and Carmichael, in accordance with which Carmichael sold some of the cattle mortgaged and with the

proceeds bought other cattle which he took to his place, and the defendant's foreclosure of its mortgage, as stated, amount to a conversion by defendant of the cattle mortgaged as against the plaintiff, holding a junior lien?

Perhaps the questions can best be answered by the following analysis: As between the defendant bank and Carmichael, the parol agreement relating to the buying and selling of cattle was valid. (11 C. J. 571, et seq.; *State v. Gorman,* 113 Kan. 740, 744, 216 Pac. 290.) The taking of a junior mortgage by plaintiff, and having it recorded, gave no notice to defendant of such mortgage. (*Burnham v. Citizens Bank,* 55 Kan. 545, 40 Pac. 912.) Plaintiff's mortgage had no effect on defendant or its dealings with Carmichael until defendant had actual notice of plaintiff's mortgage. (*Greer v. Newland,* 70 Kan. 315, 317, 77 Pac. 98; *Bank v. Walters,* 92 Kan. 391, 140 Pac. 864.) Defendant had no actual notice of plaintiff's mortgage until September 7, 1923. (There was an attempted showing of actual notice at an earlier date, but that was controverted, and as to that the trial court found against plaintiff.)

Upon this actual notice of plaintiff's mortgage defendant acted promptly and decisively. Carmichael was sent for and informed that the arrangement for buying and selling cattle must be discontinued and his indebtedness to defendant paid or made satisfactory. No cattle were purchased after that date, and the amount on deposit in defendant bank to the credit of Carmichael was applied upon his debt to the bank, and the defendant bank proceeded to foreclose its chattel mortgage by notice and sale. The cattle on hand did not bring enough to pay the debt due defendant, hence there was no surplus arising from the sale to be accounted for. The arrangement between defendant and Carmichael did not make defendant's mortgage void as to plaintiff, neither did the sale of the cattle by the defendant bank under its mortgage amount to a conversion of the mortgaged cattle as against the plaintiff. This is clear under the authorities above cited, unless there were some cattle mortgaged to plaintiff which were not covered by defendant's mortgage, or which defendant did not have the right to sell. There is no merit in the suggestion that some cattle were sold which were covered by plaintiff's mortgage, but not covered by the mortgage of defendant, for plaintiff in the mortgage it took recognized the existence of defendant's mortgage lien to the amount of $3,500 upon all of the cattle

described in plaintiff's mortgage. This effectively estops plaintiff from contending that some of the cattle sold were covered by its mortgage and not by the mortgage of defendant. (*Moffatt v. Fouts,* 99 Kan. 118, 160 Pac. 1137.)

Appellant argues defendant should have applied the proceeds of the sale of mortgaged cattle by Carmichael upon its debt, and should not have permitted the purchase of other cattle, or the payment of other debts, with such proceeds. This contention would be well taken if defendant had known of plaintiff's mortgage. Not knowing of plaintiff's mortgage defendant handled the matter as though plaintiff's mortgage did not exist, as it had a right to do. There is no reason from this record to question defendant's good faith, and no bad faith on the part of defendant is established or found by the court. It was the duty of plaintiff to look after its own lien and to see that the proceeds from the sale of the mortgaged cattle were properly applied, or to notify defendant of its lien. It failed to do either of these things.

Appellant cites a number of cases, none of which is directly in point. It will not be necessary to analyze them. There was no error in the judgment of the court below, and it is affirmed.