No. 29,763.

EDITH M. CROWLEY et al., *Appellants*, v. WILLIAM NIXON, and
WILLIAM NIXON, Executor, etc., et al., *Appellees*.

(296 Pac. 376.)

Opinion filed March 7, 1931.

*A. E. Crane, A. Harry Crane, B. F. Messick,* all of Topeka, and *W. J. Pirtle,* of Council Grove, for the appellants.

*Henry Torgeson,* of Council Grove, *H. W. Hart, ·Glenn Porter, Enos E. Hook, Edw. H. Jamieson* and *Getto McDonald,* all of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was originally brought to obtain a construction of a will. Later the action was broadened into an action of partition. The matter of interpretation of the instrument was first determined and the decision then made was brought to this

court for a review. The will was made by Mary Nixon, who had seven children, and in it she gave her personal property as well as the proceeds of two city lots to her seven children in equal shares, and as to a farm owned by her she provided:

"I further give, devise and bequeath to my son, William Nixon, the old home place about four miles north of Council Grove, Kansas, being the north half of the southeast quarter of the northeast quarter of the southwest quarter of section twenty-seven (27), township fifteen (15), range eight (8), Morris county, Kansas, upon the following conditions: Said William Nixon shall pay within two years after my death to George Nixon $685.71, Davis Nixon $685.71, Gertrude Ramsey $685.71, Tillie C. Kahl $685.71, Carrie Munkers $685.71, and to Edith Crowley $685.71, and in case said William Nixon does not accept the said farm upon the said terms, then the executor shall sell said farm, and authority is hereby given him to sell and convey said farm, and divide the proceeds of said farm among my children above named (in proportion to the amounts designated to be paid by said William Nixon in case he takes said farm), and in such case one-seventh of the net proceeds from the sale of said farm shall go to the said William Nixon."

It is conceded that William Nixon did not comply with the conditions in the will respecting payments to the other heirs within two years after the death of Mary M. Nixon, and the effect of that noncompliance was the question determined on the first appeal. The decision as stated in the syllabus of the opinion is:

"A will devised a farm upon condition that the devisee pay to certain heirs certain sums within two years after the death of the testatrix, and provided that in case the devisee did not accept the farm upon such terms then the executor should sell it and divide the proceeds among the heirs named. The devisee took possession of the farm, but did not make payment of the sums required within the two years. *Held*, that he was bound to accept the farm under the conditions stated or reject it, and that upon his failure to make the payments as required the farm reverted to the heirs according to the provisions of the will." (*Crowley v. Nixon,* 127 Kan. 178, 272 Pac. 104.)

Following this determination plaintiff, in an amended petition, set forth the interests of the several children, including the plaintiff's, and asked for partition of the land among them in accordance to their respective rights subject to any money owing by any of them to the executor, William Nixon. In the amended petition plaintiffs alleged that William Nixon had been in possession of the land for the years 1926, 1927 and 1928, and is still in possession of the same as their tenants; that he has not paid any rent to his tenants in common and was therefore indebted to them for a reasonable rental, alleged to be $800 per year for four years, making a

total of $3,200, with interest, for which they asked judgment. William Nixon answered admitting that he was in possession of the land and had been for twenty-six years; that he had cared for his mother since 1907; that it was her intention often expressed that he should have the farm at her death; that since her death he had made improvements and paid taxes on the farm and exercised every right of ownership over it with the knowledge and acquiescence of other legatees; that they had received payments of money from him by reason of which they were estopped from insisting on a sale of the farm and the division of the proceeds. He also alleged that he had made payments of money to certain of the children as the will provided, which they had accepted and for which they signed releases with an agreement to a dismissal of the action which they had brought. He further alleged that he was not required to make the payments until after the settlement of the estate of his mother, and that such settlement had not been made. He alleged, too, that plaintiff Edith Crowley had been tendered the amount due her as mentioned in the will, which she had refused to accept. There was an allegation that defendant had built a fence, a barn, shed, corncrib and some other minor improvements, the total value of which was $2,770, for which he was entitled to credit and an allowance.

Plaintiff filed a reply answering that most of the questions raised in defendant's answer had been already determined by the decision in *Crowley v. Nixon*, supra. Further, that the improvements had been placed on the land prior to the death of the testatrix, and that if he had any claims for improvements they were barred by the statute of limitations. They also alleged that defendant had fraudulently and secretly schemed to acquire the title to the property after this action was brought, and did so while he was acting as executor and holding the property in trust for plaintiffs. He made false and fraudulent representations to them that their claims were invalid, without value; that the litigation would cost them more than they would receive from the estate. To one legatee he falsely represented that all the other legatees had settled with him except that legatee and Edith Crowley; that the others had taken the amounts offered and had signed receipts, and that if this legatee did not settle on his terms it would be too late for him to ever receive anything. That if the litigation was continued he would get nothing out of the estate. Three others were induced to accept the

settlements on similar representations, and each being alone and beyond the reach of counsel or definite information, settlements were made and releases signed for the money received. He stated to them that releases had been signed by all but the one appealed to and showed releases which purported to have been made already. He urged that attorneys would get all the money in the end, and that the money was paid and the release signed in the belief that his representations were true, whereas they were fraudulently made without consideration, and that the property at the time of procuring the leases was of the value of $15,000, in which each of them had an interest in the property of over $2,000, and that under the circumstances the releases were unconscionable and void. The reply further contained the averment that William Nixon was the executor of the estate in charge of all the property, that he occupied a fiduciary relation toward each and all of the parties executing the releases and therefore the settlements were void.

Upon the testimony the court found, among other things, that: "Subsequent to the commencement of this action, and more than two years after the death of Mary M. Nixon, without any false, material or fraudulent representations, William Nixon paid to D. C. Nixon, George D. Nixon, Gertrude Ramsey, Faubian D. Kahl and Reta Heis, respectively, the sums provided to be paid them by the will of Mary M. Nixon, as set out in the second finding, and took from each of them a written instrument, headed 'release,' all of which differed only as to name and amount," and that Carrie E. Munkers in her lifetime had also executed an assignment of all her interest in the estate to William Nixon. It was also found that at the time the releases were signed the parties were familiar with the land and its value and dealt with William Nixon as a party interested adversely to them in the pending litigation, and it all was done with the intention of surrendering their rights and interests in the land to him. The reasonable rental of the land, it was found, was $750 per year, and the fair market value of the farm was $12,-000. There was a finding that William Nixon had made improvements on the farm of the value of $125. As conclusions of law the court stated that the releases signed by the other children constituted a complete settlement of their interest in the land and a transfer of it to William Nixon, and that Edith Crowley, who did not execute a release, was entitled to one-seventh of the land; that William Nixon is chargeable with rental of the land from two years

after the death of his mother, that is, from January 7, 1927, at the rental of $750 per year, being $2,250, and should be credited with $125 for the improvements he made; and that Edith Crowley is entitled to have partition in accordance with the interests set out in the findings. Judgment was accordingly entered, adjudging that William Nixon was the fee-simple owner of six-sevenths interest in the land, that Edith Crowley was the owner of one-seventh interest, and also a recovery of one-seventh of the rental, to wit, $321.43, less one-seventh of the improvements, to wit, $17.86, and one-seventh of the taxes paid by William Nixon, to wit, $80.27, leaving $223.30 due to Edith Crowley, in addition to her one-seventh interest in the land. The costs were taxed to the plaintiffs other than Edith Crowley, and to the defendants other than William Nixon, the executor.

It has already been determined that William Nixon was devised the land in question, subject to a condition, and that failing to comply with the condition the land passed to the children of the testatrix in equal shares. The condition, it is conceded, was not complied with, and the result was that the title to the land passed to all of the children in equal parts. (*Crowley v. Nixon,* supra.) The condition imposed by the testatrix was in the nature of a consideration for a devise or a condition precedent. In *Mollenkamp v. Farr,* 70 Kan. 786, 79 Pac. 646, a testator whose family consisted of a wife and six children, two sons and four daughters, devised a farm to his widow as her life estate, and added: "I desire that the farm at her death should go to my sons, Louis and George, provided . . . that they pay over whatever difference there may be in the appraisement or allotment made by their mother, for the benefit of my other children, said allotment to be made at the discretion of my wife." It was held that the requirement imposed on the devisees was in the nature of a consideration for the devise and should be regarded as a condition precedent. See authorities in note, 62 A. L. R. 589. Under the circumstances William Nixon did not become the absolute owner of the property and was limited to a one-seventh, a child's share. Did he acquire it in the releases and an assignment which he had obtained from other legatees? They challenge the validity of these because of false representations and fraud of William Nixon in obtaining them, and also by the fact that he was the executor of the estate and occupied a trust relation to the other members of the family, which required of him the utmost good faith in the management of the estate placed in his care. Certainly it precluded him

from any contract for his personal advantage at the expense of others interested in the land. It has been said that:

"A fundamental principle of law known by every lawyer is that an administrator of an estate cannot contract for his personal advantage concerning any matter connected with the estate. Such contracts are unenforceable. [Citing many authorities.]" (*Judy & Gilbert v. Railway Co.*, 111 Kan. 46, 48, 205 Pac. 1116.)

The point was considered at length in *Alumbaugh v. Hedges*, 125 Kan. 449, 265 Pac. 50, where it was said:

"Plaintiffs appeal, complaining that the court ignored the general rule of law that executors, administrators, guardians, trustees and functionaries of that general character may not traffic to their own private advantage in estates or properties towards which they have any official or moral responsibility. This rule is as much a principle of ethics and of practical honesty as it is of law. The moral philosophy which underlies the rule was comprehensively treated in *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, in which is included a quotation from *Staats v. Bergen*, 17 N. J. Eq. 554, which deserves to be repeated: 'So jealous is the law upon this point that a trustee may not put himself in a position in which to be honest must be a strain upon him.'" (p. 453.)

See the numerous authorities cited there in support of the rule: In *Webb v. Branner*, 59 Kan. 190, 52 Pac. 429, it was held that an administrator, guardian or trustee could not purchase the interest of his *cestui que trust*, even though a fair price was paid. It was said:

"It was shown that a fair price was obtained for the lot, but there being a manifest conflict between the duties of the trustee and his personal interests, the courts, for the purpose of removing all opportunity for fraud, generally hold such transfers to be void, whether they appear to be fair or not." (p. 195.)

In *Frazier v. Jeakins*, 64 Kan. 615, 68 Pac. 24, it was said:

"The opportunities which are open to an unfaithful trustee to advantage himself out of the trust estate are so many and so tempting, and the condition of the beneficiary in the trust ordinarily so helpless and confiding, that the law gives warning in advance against all transactions out of which it is possible for the former to make gain at the expense of the latter." (p. 619.)

The testimony is to the effect that the executor procured the interest of his relatives in the estate at a price less than one-half of its value. It has been held that "a grossly inadequate consideration for the release of valuable rights has been held to be in itself an evidence of fraud." (*Rauen v. Insurance Co.*, 129 Ia. 725, 740.)

The evidence tends to show that the representations made to the plaintiffs and the methods employed by the defendant to procure

the releases were misleading and fraudulent and of themselves an evidence of fraud. But apart from these evidences of fraudulent conduct, it must be held that the contracts made by the defendant with the other children of the testatrix were void and unenforceable and that the plaintiffs could repudiate them and were entitled to the relief asked.

There remains the question of rentals to be paid for the use of the land. The decision of the trial court was that defendant was only chargeable for the rentals accruing since January 7, 1927, and was not liable to pay rent for a period of two years following his mother's death. It is argued that the will did not in terms require the defendant to pay rent in case he did not accept the devise, and that he cannot be regarded as liable for rent until the expiration of the two-year period mentioned in which payment could be made. The will, as will be observed, gave the land to him upon a condition precedent. That condition was not performed, and hence defendant never acquired more than one-seventh interest in the farm. He was given two years to make the payments to other legatees in case he accepted the devise, but he was not given two years in which to accept it. If there was to be an acceptance it should have been made within a reasonable time after the death of the testatrix, and in the event of an acceptance he had two years in which to make the prescribed payments to the other legatees. As we have seen, he did not accept, and therefore became entitled to no more than a child's part of the farm, and that was the limit of his rights to the use and profits of the farm. Having had the possession and profits of the farm, six-sevenths of which belonged to the other legatees, no reason is seen why he should not be chargeable with rentals for the entire period, and it must be held that he is liable for the rent of the premises, not only after January 7, 1927, but also for the preceding period of two years.

It follows that the judgment must be reversed and the cause remanded for further proceedings in accordance with this opinion. It is so ordered.