No. 31,305

THE CITY ICE COMPANY OF KANSAS CITY and ARTHUR HARDGRAVE, *Appellees,* v. THE QUIVIRA DEVELOPMENT COMPANY, *Appellee;* EUGENE V. R. THAYER, as Receiver of THE MISSISSIPPI VALLEY UTILITIES INVESTMENT COMPANY, *Appellant.*

(30 P. 2d 140.)

Opinion filed March 10, 1934.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave,* all of Kansas City, and *Charles M. Miller,* of Kansas City, Mo., for the appellant.

*C. W. Trickett* and *M. W. Borders, Jr.,* of Kansas City, Mo., for C. W. Trickett, Receiver; *C. M. Gorrill, William Drennan,* both of Kansas City, and *M. W. Borders,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This litigation grew out of a project of the building of Quivira by the Quivira Development Company, a syndicate of men who engaged in the purchase of land in Wyandotte and Johnson counties, in the neighborhood of Kansas City. They purchased contiguous tracts, amounting to about nine hundred acres, on which dams and lakes were made, roads were built, water and sewer systems constructed, a community house, golf clubs and a number of dwelling houses were erected by purchasers, and the tract made ready for sale, until the company had expended about

one million dollars. The group or syndicate that undertook the development had placed a mortgage for a sum named as $200,000, and they also borrowed from the Mississippi Valley Utilities Investment Company the sum of $550,000. In the trust deed or mortgage given to the latter company, it was recited that the debt was secondary and subject to the $200,000 mortgage of the syndicate mentioned.

When the company arrived at financial straits, an action was filed in April, 1932, for the appointment of a receiver of the company, and C. W. Trickett was appointed receiver. On an order of the court all creditors were required to file with the receiver on or before June 22, 1932, their verified claims, specifying their securities, and notice was given by publication and also by personal letters to each claimant or creditor shown by the books of the company or known to the receiver. Among the claims so presented and verified was that of the syndicate mortgage upon which there was still due and unpaid about the sum of $177,500. Eugene V. R. Thayer, who had been appointed receiver for the Mississippi Valley Utilities Investment Company, filed a claim in the sum of $523,000, secured by the deed of trust in which it was recited that it was secondary and subject to the mortgage of the syndicate for $200,000, as the first mortgage. The receiver proceeded at once with the adjustment of the claims and recommended priorities as follows: The Hardgrave-Borders syndicate in the sum of $177,500, a first lien; the mortgage to Eugene V. R. Thayer, as receiver of the Mississippi Valley Utilities Investment Company, a second lien upon said property.

Upon the filing of the receiver's report all parties interested were notified by publication or personal letter and a hearing was had on September 2, 1932, in which counsel for both parties were present. On the hearing had the court determined the priorities recommended by the receiver giving a first lien to the syndicate in the sum of $177,500, and a second lien on the property to Eugene V. R. Thayer, as receiver of the Mississippi Valley Utilities Investment Company. At the same time the court made an order of sale of all the property of the Quivira Development Company, to be held on the 19th day of September, 1932, and the sale was held on that day, and the property was sold for $69,000 in cash, with a credit of $120,-000 on the first mortgage lien.

·The bidder was Arthur Hardgrave, who was properly qualified and represented the syndicate and the Fidelity National Bank, which was financing the claims. The bid was for $69,000 in cash, with the discount on the syndicate claims, and other bids were made so that the aggregate of the bids was approximately $189,235.68. The court authorized the receiver to deliver the deeds, bills of sale and other necessary instruments and papers to convey the title to all the property sold to the purchasers.

Objections were made to the sale and confirmation by the appellant. An extended hearing was had on its objections on September 24, 1932, but these were overruled, and an order of confirmation was entered. While the objections were made by Thayer, receiver, no supersedeas bond or one to stay proceedings was given by him. Trickett, the receiver, went on and transferred the property, paid the indebtedness of various kinds as directed by the court, and made his report to the court showing that all the funds had been paid out except $226.74, which had been left to pay accruing and added costs in the proceeding. This report and the distribution of payments made were approved by the court.

On January 14, 1933, Thayer, as receiver, gave notice of an appeal. A motion to dismiss the appeal was filed on the ground that all the steps taken by the courts, including the conveyances and transfers of the property, had been done with the knowledge of the appellant and that the estate was practically closed, and that no bond or stay of proceedings to make the appeal effective had been given by the appellant.

Under the circumstances mentioned, it was held that appellant was estopped to contest the sale and confirmation, that all property had been conveyed and transferred to innocent purchasers, and that the case had now become moot.

On this appeal the appellant's main contention is that the first lien under the syndicate mortgage was void on the ground that, as made, it was contrary to the law of Missouri, the state in which it was executed. Another objection of appellant is that the price at which the property was sold was inadequate and unconscionable even in a time of depression and will operate to be unduly profitable to the purchaser. The evidence is plainly sufficient to show that the price paid was not unconscionable nor inadequate. After the sale appellant filed a motion or petition to set it aside on the grounds stated, and an extended hearing was had on the questions raised.

The purchaser, it appears, was required to fulfill obligations of the original owners to the parties to whom homes were sold and erected on the property, such as furnishing them with water, light and sewer systems and other community obligations, and that these were assumed by the purchaser. Because of the necessities of the case, the court had little discretion in the premises. An opportunity had been given for months to the appellant to purchase or secure purchasers for the property. It had made an investigation, and at the hearing the opportunity was renewed, but it was reported to the court that the appellant had tried for some time to secure a purchaser or one who would finance the proposition and pay more for the property than the purchaser had done. Appellant, as we have seen, had failed to give a supersedeas bond or to stay the decree, but had allowed the title to the property to pass to the purchasers, and this receiver had paid the creditors until the fund provided had been practically exhausted.

The court after hearing the testimony expressed surprise and pleasure that so high a bid had been made by the purchaser, and no reason is seen why the order of the court in confirming the sale should be disturbed. The principal ground of error assigned by appellant is the fact that the first mortgage given by the syndicate was executed in Missouri, and that the effect of the Missouri statute is to constitute this act the doing of business by a foreign corporation in Missouri where the notes and mortgages were given, and the company not being licensed in Missouri, the instruments were void and could not be considered in the settlement of the question.

This was not an issue in the case as tried. It had not been suggested in any pleadings in the cause or raised in any way until the confirmation of the sale came up for action, and the court held that appellant was not in a position to challenge the validity of the prior mortgage. That judgment was based on the fact that the making of the prior mortgage was a single transaction and not the doing of business in Missouri. The estoppel rests on the fact that ordinarily a mortgagee may allege the invalidity of an apparent prior mortgage, but where the subsequent mortgage contains an express recital that it was taken subject to the prior mortgage he is estopped to question its validity. (*Moffatt v. Fouts,* 99 Kan. 118, 160 Pac. 1137.)

In appellant's mortgage notes each of them recited as follows:

"This note is one of a series issued, or to be issued, numbered consecutively one (1) to five hundred five (505), inclusive, for an aggregate principal amount

not exceeding the sum of five hundred five thousand (505,000) dollars, which said series of notes is secured by a second deed of trust executed by the Quivira Development Company, dated September 1, 1930."

The deed of trust itself recited as follows:

"This deed of trust shall be and is subject and secondary to a first mortgage given by the company to secure the payment of two promissory notes aggregating in the principal sum of $200,000, dated April 20, 1929, recorded in the office of the register of deeds in Johnson county, Kansas, in book 90 of mortgages, at page 111."

In *United Shoe Machinery Co. v. Ramlose,* 210 Mo. 631, it is pointed out that a statute of Missouri contains a provision prohibiting foreign corporations, which have not complied therewith, from doing business in the state or suing on contracts made therein.

*Booth v. Scott,* 276 Mo. 1, is cited as an interpretation of that statute, in which it was said:

"All contracts made or attempted to be made in this state by foreign corporations not licensed to do business in this state, as required by the provisions of section 3039, Revised Statutes 1909, are absolutely void." (p. 31.)

In Missouri they have a statutory requirement that all domestic corporations shall have a percentage of their capital stock paid in cash or property before the corporation can do business in the state, and the statute considered in the case cited penalized citizens of Missouri who attempted to avoid the provisions of the act by going into another state and incorporating without having paid the cash or property, and then coming back into Missouri and transacting business there.

The court was dealing with citizens of Missouri alone, so the statute was passed to overcome the fraud of citizens and residents of Missouri who were attempting to avoid the laws of Missouri, and that the pretended incorporators might be held as partners and thereby be liable for the debts of the pretended corporation. The court was dealing with a different case than the one at bar. It was dealing with Missouri citizens, in a Missouri court under Missouri laws, respecting Missouri property. In the instant case the court was dealing with a Kansas corporation in a Kansas court, under Kansas laws, with respect to real estate located in Kansas. The Quivira company was not organized to engage in the business of issuing notes and mortgages, but it was organized to develop a section of country into a suburban one by building a country club, to sell or transfer lots to buyers there, and to develop it so as to maintain

roads and sewers, with systems of light and water for those to whom the lots were sold. The isolated incident of signing and taking an acknowledgment of a mortgage in obtaining money to carry on the business mentioned in Kansas, is in no sense a violation of the Missouri statute nor an impairment of the validity of the mortgage acknowledged in Missouri. Under the Kansas statutes authority is given to corporations to buy, sell or transfer property or evidences of indebtedness outside as well as inside of the state. (R. S. 17-603.) Then we have a statute which provides that instruments like deeds and mortgages of land executed and acknowledged in any other "state, territory, or country, in conformity with the laws of such state, territory, or country, or in conformity with the laws of this state, shall be as valid as if executed within this state in conformity with the provisions of this act." (R. S. 67-228.) Provision is also made for the acknowledgment of instruments like the mortgage, providing that if acknowledged out of the state it must be before some court of record, clerk or officer holding the seal thereof or before some notary public. (R. S. 67-212.)

So we see that the mortgage in question was executed and acknowledged in conformity with the laws of Kansas and also of Missouri, and when the notary public learned that the instrument dealt with real estate, he doubtless recognized it was as stated by the supreme court of the United States:

"It is a principle firmly established that to the laws of the state in which the land is situated we must look for the rules which govern its descent, alienation and transfer." (*DeVaughn v. Hutchinson,* 165 U. S. 566.)

And the Missouri court in *Booth v. Scott,* supra, adds, after citing other authorities:

"It cannot be conceived that the laws of one independent state can in any way interfere with the disposition of any part of the domain of another." (p. 38.)

It appears that the Missouri courts have made the distinction that a foreign corporation is not to be denied the privilege of making an isolated contract in Missouri without taking out a license to do business in that state, and that it is only required not to carry on the business for which the corporation was organized without compliance with the law of the state. Cases are cited holding that such transactions are not the doing of business within the meaning of the Missouri act. (*First Nat. Bank v. Leeper,* 121 Mo. App. 688; *Bond*

*Street Co. v. Printing Co.*, 182 Mo. App. 309; *Hurst Automatic Switch & Signal Co. v. Trust Co.*, [Mo.] 216 S. W. 954; *Wulfing v. Cork Co.*, 250 Mo. 723.)

In the late case of *Shields v. Chapman*, 240 S. W. 505, where a note was executed and delivered in Missouri by the president of a foreign corporation, and because the corporation was not licensed to do business in Missouri it was sought to make him liable as a partner as in *Booth v. Scott*, supra, upon which appellant relies, it was decided that:

"Isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and citizens of another, are not a 'doing or carrying on of business' by the foreign corporation within the latter state, where the transaction is of such character as to constitute a part of the ordinary business of the company." (p. 505.)

While some language is used in the cases cited by appellant looking towards the position it is contending for, it is clear that the single transaction of executing and acknowledging the prior mortgage did not constitute the doing of business within the meaning of the Missouri statute or operate to impair the validity of the mortgage. Aside from that the recitals in the mortgage and notes of appellant are such as to estop it from contesting the validity of the prior mortgage within the doctrine of *Moffatt v. Fouts*, supra. (See, also, *Lawrence National Bank v. Howard*, 125 Kan. 85, 262 Pac. 561; 27 Cyc. 1226.)

Nothing is found in the record to warrant disturbance of the decision of the trial court in the confirmation of the sale. Its judgment is therefore affirmed.