No. 31,585

THE CITY ICE COMPANY, *Plaintiff*, v. QUIVIRA DEVELOPMENT COMPANY, *Defendant* (ELMER E. SENSOR and ANNA E. SENSOR, Interveners, *Appellants*, C. W. TRICKETT, Receiver, and M. W. BORDERS, JR., Attorney for Receiver, *Appellees*).

(31 P. 2d 59.)

Opinion filed April 7, 1934.

*Raymond G. Barnett* and *Glenn A. Thomas,* both of Kansas City, Mo., for the appellants.

*C. W. Trickett,* Receiver, of Kansas City, and *M. W. Borders, Jr.,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

BURCH, J.: Elmer E. Sensor and wife intervened in the receivership proceeding relating to the Quivira Development Company and asked for an order requiring the receiver, C. W. Trickett, and the attorney for the receiver, M. W. Borders, Jr., to account for and

pay over to the interveners a sum of money. The court denied the relief prayed for, and the interveners appeal.

The nature of the Quivira company's enterprise is sufficiently described, and features of the receivership proceeding are sufficiently set forth, for present purposes, in the opinion in the case of *City Ice Co. v. Quivira Development Co.*, 139 Kan. 33, 30 P. 2d 140. Before the receivership proceeding was commenced, strenuous efforts to finance the Quivira company by reorganization and other means had failed. Pending the receivership it was necessary to operate the property of the Quivira company, and receiver's certificates were issued. Outgo exceeded income, the fund obtained by receiver's certificates was reaching point of exhaustion, and sale of the property became imperative. The character of the Quivira project was such that competitive bidding above a small sum was impossible under conditions as they existed in the summer of 1932, and it was necessary to drum for a bidder with capital sufficient to shoulder the Quivira burden, including obligations to the colony of residents on the Quivira tract.

Eugene V. R. Thayer, referred to in the previous opinion, became a prospective purchaser and sought to drive hard bargains with lienholders for discount of their claims; and it may be said here that ultimately one lienholder consented to discount its claim from $190,000 to $120,000.

Within the Quivira tract were some units covered by first-lien purchase-money mortgages. The interveners held two such mortgages, one for $7,000 and one for $4,400, which the court ordered paid in full. The receiver's attorney, Mr. Borders, corresponded with the attorney for these mortgagees and, after consultation with his clients, the attorney advised Mr. Borders the mortgagees would accept $10,000 in full satisfaction of their liens. The letters were introduced in evidence. There was no basis for any misunderstanding or misinterpretation of their contents, and the statements contained in the Borders letters were literally true.

Thayer ceased to be interested as a purchaser, and it was necessary to find somebody else who might become a purchaser of the Quivira property. The Fidelity National Bank and Trust Company, of Kansas City, Mo., acting through A. Hardgrave, became interested. The interveners agreed their previous offer to discount their claims to $10,000 should stand, and the property was sold at master's sale to the Fidelity bank. As indicated, the court had

ordered the intervener's claims to be paid in full. The receiver issued checks payable to the interveners for the full amount of their claims, $11,970. The checks were duly indorsed by the payee, were paid by the bank on which the checks were drawn, were charged to the receiver's account, and the canceled checks were returned to him by the bank with statement of his account.

There were two checks payable to the interveners, one for $10,000, the amount they had agreed to accept, and one for $1,970, which represented the discount which was to go to the purchaser at the master's sale. Both checks were delivered to the mortgagees by Mr. Borders, and the mortgagees executed and delivered to Mr. Borders releases of the mortgages. After indorsing the check for $1,970, and delivering the releases, the interveners returned the check to Mr. Borders.

Throughout the receivership proceeding the interveners had been represented by Mr. S. D. Scott, of Olathe, Kan., known by this court to be an able and honorable attorney. It is significant he did not appear as attorney for the interveners in the district court, and does not appear for them here. Concerning disposition of the check for $1,970, Mr. Borders testified as follows:

"That money went to the purchaser of the property, in exact accord with the agreement, and in exact accord with the understanding with Mr. Scott."

The purpose of the intervention was to have the court make the receiver and his attorney pay to the interveners the sum of $1,970. The interveners stated their claims in an intervening petition, a supplemental intervening petition, and a reply to the answers of the receiver and his attorney. The court found every issue of fact against the interveners.

The abstract of the proceedings contains a little more than 165 pages. It would require much space, and would serve no useful purpose, to canvass in detail the charges against the receiver and his attorney, and the evidence sustaining the court's findings. There was some conflict in the testimony. The court, in the exercise of its judicial function and duty, resolved those conflicts against the interveners. Perhaps in some instances different inferences might have been drawn from the testimony. The court, in the exercise of its judicial function and duty, reached conclusions adverse to the interveners, and this opinion might well end here. However, brief reference may be made to some matters of fact and one matter of law.

Before the receivership action was commenced, it was believed an effort to reorganize the Quivira Development Company would be successful, and the Quivira Lakes Development Company was created. The organizers consisted of a group of Kansas City, Mo., and Kansas City, Kan., men, which included M. W. Borders, father and law partner of M. W. Borders, Jr., who afterwards became attorney for the receiver, and Laurence G. Trickett, son of C. W. Trickett, who afterwards became receiver. There was undisputed testimony the organization of this company had nothing to do with the subsequent receivership, and was no part of any scheme or plan to get hold of the assets of the Quivira Development Company.

There was testimony that a member of the company believed the word "Lakes" in the corporate name was detrimental, and the name was changed to Quivira Land Company. As indicated, the Fidelity bank purchased the property of the development company at the master's sale. Subsequently the property was transferred to the Quivira Land Company. Mr. M. W. Borders, Jr., testified organization of the Quivira Land Company was not completed until after the master's sale, and testified as follows:

"When the sale was made, and when the sale was confirmed, there was no agreement of any kind, nature, or description, between the Quivira Land Company, or myself, or anybody for it, or anybody, with Mr. Hardgrave and the Fidelity bank. It was hoped that something might be done, but it was the bank's baby during all of that period."

Insinuation and innuendo served in place of fact as the basis of intervener's claim they had been deprived of $1,970 through misconduct of the receiver and his attorney, and the court found the facts in favor of the receiver and his attorney.

In view of the findings, the matter of law referred to is of no consequence. However, the legal basis of the intervention is stated in the interveners' brief as follows:

"A fiduciary or trustee has no right to deal with his *cestui que trust* for his own benefit, either in a personal or representative capacity."

The proposition is supported by citation of *Hotchkiss v. Fischer*, 136 Kan. 530, 16 P. 2d 531; *Crowley v. Nixon*, 132 Kan. 552, 296 Pac. 376; *Farmers State Bank v. Crow*, 126 Kan. 395, 267 Pac. 1100; *Alumbaugh v. Hedges*, 125 Kan. 449, 265 Pac. 50; *Sowers v. Pollock*, 112 Kan. 599, 212 Pac. 103, and is perfectly sound. The proposition and the cited decisions, however, have no pertinency whatever to this case.

So far as the receiver is concerned, it is sufficient to say the intervention was utterly groundless and unjust. Mr. Borders had no dealings with the interveners or with any other lienholder for his own benefit, directly or indirectly, or for any improper purpose. In his negotiations with the interveners for a discount of their claims he did not act for his own benefit, nor "represent" the receiver, nor the bank, nor the land company. In connection with the decision the trial court said:

"I don't think Mr. Borders should be criticised because he took an active part in trying to get a purchaser in some way or other for this concern; in fact, so far as I am concerned, I appreciate that he was endeavoring to do so, and was carrying on negotiations in order to get a purchaser, because I was very anxious to save that concern out there as a development project. . . . He was quite diligent. I don't know why he should not have done so. . . . We were all trying to get the project out of it the best way we could."

Without further discussion, this court holds there is no merit in the appeal, and the judgment of the district court is affirmed.