No. 34,964

Roy V. Nelson, *Appellee,* v. Josephine Gossage, *Appellant.* (Ezra M. Gossage et al., *Defendants.*)

(107 P. 2d 682)

Opinion filed December 7, 1940.

*Walker F. Means,* of Hiawatha, for the appellant.

*Roy V. Nelson,* of Hiawatha, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This action was to foreclose a mortgage on eighty acres of land. The appeal is from an order of the court sustaining a motion to strike certain allegations in the separate answer of one of the defendants.

J. R. Harding died intestate on March 27, 1936, seized and possessed of the land in question. He left a brother, Cornelius J. Harding, and a sister, Mary Harding Reed, as his sole heirs.

Ezra Lichty, one of the defendants in the present foreclosure action, was appointed administrator of the estate of J. R. Harding. Lichty was appointed administrator April 6, 1936, and final settlement of the estate was made June 22, 1937.

J. R. Harding left 1,000 acres of land in Brown county, free of encumbrance, valued, for inheritance tax purposes, at $80,000. In April, 1936, Mary Harding Reed conveyed her interest in the eighty acres here in question to her brother Cornelius.

On August 21, 1936, Cornelius J. Harding executed a note for $2,000 to Ezra Lichty, and on the same date executed a mortgage on the eighty acres to secure the note. The mortgage was recorded on the following day. Thereafter and on January 11, 1937, Cornelius J. Harding conveyed the eighty acres to his daughter Josephine Gossage "and the heirs of her body." Cornelius J. Harding died March 4, 1937, and final settlement of his estate was made July 26, 1938.

Nelson, assignee of the note and mortgage, brought the present action in foreclosure. In due course a decree of foreclosure was entered and sale of the premises was made thereunder. Thereafter, the sale was set aside and plaintiff filed an amended petition bringing in new parties. To this amended petition the defendant, Josephine Gossage, filed her separate answer.

The answer admitted the execution of the note and mortgage, but alleged the same were executed by reason of the false and fraudulent representations of Lichty and are therefore void. The answer charges:

The eighty acres involved are and were at all the times men-

tioned worth $5,000; that shortly after his appointment as administrator of the estate of J. R. Harding, the defendant Lichty "began to plan and conspire to become the owner of said real estate without paying an adequate consideration therefor." The plan and scheme set forth was to induce Cornelius J. Harding to borrow money from Lichty upon the security of the land in question to the end that Lichty would "eventually acquire said real estate at an inadequate price by foreclosure proceedings." To induce Cornelius J. Harding to borrow money from Lichty and to execute a mortgage on the land to secure the note, Lichty falsely and fraudulently represented to Harding that by reason of the debts against the estate of J. R. Harding, and the expenses of administration, there would be little revenue from the estate for a long period of time, and it would be necessary to borrow money on the real estate, and that Lichty would loan the money; that on April 25, 1936, Lichty procured from Cornelius J. Harding and his sister, Mary Reed, an agreement in writing that they were not to receive any rents and profits from the land belonging to the estate of J. R. Harding until March 1, 1937, but that such rents and profits were to be collected by Lichty and "utilized for the purpose of paying the taxes on said real estate and the debts and costs of administration of the estate of J. R. Harding, deceased." It was further alleged that at the time the agreement was executed, no claims had been allowed against the estate, and that the just and lawful claims and expenses were not of such an amount as to require turning over to the administrator all of the rentals. In furtherance of the plan and scheme to induce Cornelius J. Harding to borrow money on the land, the answer alleges that defendant Lichty, as agent for one Emma Lichty, wrongfully caused to be filed against the estate of J. R. Harding a certain promissory note, amounting in principal and accrued interest to $1,816.50, and as agent for one Gladys Lichty a claim for $1,657.81; that defendant well knew that the claims were not just and lawful; that defendant falsely and fraudulently paid such claims without the claims having been allowed by the probate court, and thereafter fraudulently procured the probate judge to endorse the claims as having been duly allowed, whereas in truth and fact such claims had never been legally presented and allowed; that in truth and in fact, such claims were not valid and just obligations of J. R. Harding, deceased, and that after the claims were paid, Lichty fraudulently procured an endorsement on the

back of the claims by judge of the probate court that the claims had been duly allowed. Also as an inducement to Cornelius J. Harding to borrow $2,000 from Lichty, it was alleged that Lichty fraudulently represented that "the reasonable attorneys' fees and administrator's fee of said estate would amount to approximately the sum of $3,000, although he, the said E. Lichty, well knew that said fees were unreasonable and exorbitant and were not proper fees to be allowed against said estate." It was alleged that Cornelius J. Harding was at the time of the execution of the mortgage more than eighty years of age. The answer further alleged:

"Defendant further alleges that the note and mortgage set up in plaintiff's amended petition are void as having been fraudulently obtained, are void as having been obtained through trafficing of the administrator of said estate with the assets of said estate, are not due and not subject to foreclosure."

The answer does not set up a counterclaim demanding damages in tort for deceit, neither is cancellation of the note and mortgage or any affirmative relief in equity requested. The defense seems to be predicated on the theory that any transaction between an administrator and those interested in the estate is absolutely void.

That an administrator is a fiduciary and owes the highest degree of loyalty to those interested in the estate has often been declared by this court. (*Alumbaugh v. Hedges*, 125 Kan. 449, 265 Pac. 50; *Crowley v. Nixon*, 132 Kan. 552, 296 Pac. 376; *In re Estate of Brown*, 147 Kan. 395, 76 P. 2d 857.)

While we adhere to this doctrine so often announced, it does not follow all transactions between an administrator and the heirs of the intestate are utterly void.

A conveyance by a beneficiary to his fiduciary may be set aside for fraud, duress or undue influence. In dealing with the beneficiary on his own account, a fiduciary is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the fiduciary knows or should know. See Restatement, Trusts, § 343, *comment l* and *m*. If he fails so to do, the transaction may be set aside. (*Crowley v. Nixon*, supra.)

We quote from Restatement, Contracts, § 498:

"FIDUCIARY RELATIONS RENDERING A TRANSACTION VOIDABLE

"Where a beneficiary enters into a transaction with his fiduciary relating to matters within the scope of the fiduciary relation, the transaction is voidable, unless

"(a) it is fair and reasonable, and

· "(b) is assented to by all parties beneficially interested, with knowledge of their legal rights and of all relevant facts that the fiduciary knows or should know, and

"(c) these parties are of competent age and understanding and are not subjected to undue influence.

"*Comment:*

"*a.* 'Fiduciary' in the section includes a trustee under an express trust, a guardian, an executor or administrator. . . ."

Therefore, it cannot be said the instruments sued on are void either for the fraud alleged, or on account of the fiduciary relationship between the parties.

If the claims against the estate paid by Lichty out of the proceeds of the loan were valid, there was no element of fraud, as that was the purpose for which the loan was made. But if the claims were spurious, and the claims were allowed by the court by reason of the fraud of Lichty, as charged, can that question be raised in this collateral proceeding?

In *Van Dusen v. Woolen-mill Co.*, 74 Kan. 437, 87 Pac. 74, it was held that the allowance of a demand by a probate court was in effect a judgment and was not open to a collateral attack.

Courts of equity have inherent jurisdiction to relieve from fraudulent or void judgments, particularly where the invalidating facts are not apparent from the record. (1 Freeman on Judgments, 5th ed., § 308; *Klemp v. Winter*, 23 Kan. 699; *James v. Young*, 111 Kan. 310, 206 Pac. 905.)

In the matter before us the answering defendant is, in effect, asking the court to overthrow and set aside the judgment of the probate court. It is not a direct proceeding in equity to set aside the judgment, but a clear instance of collateral impeachment. (1 Freeman on Judgments, 5th ed., § 314. See *Horner v. Schinstock*, 80 Kan. 136, 101 Pac. 996.)

Moreover, the answer alleges the fraud was perpetrated prior to August 21, 1936, the date of the note and mortgage sued on herein. The answer setting up the fraud was filed August 22, 1940, more than four years after the alleged fraud was perpetrated. Under our statute G. S. 1935, 60-306, an action for relief on the ground of fraud must be brought within two years.

Other objections to the defense set up by the answering defendant are apparent on the face of this record. Final settlement of the estate was made June 22, 1937. A final settlement is a direct adjudication that the estate is fully administered, that the adminis-

trator has executed his trust and has accounted for all moneys received, as the law requires, and such ruling is final and conclusive unless appealed from. (*Harvester Co. v. Algie,* 101 Kan. 654, 168 Pac. 876; *Kandt v. Czarnowsky,* 152 Kan. 159, 102 P. 2d 997.)

Also, when the defendant acquired the property the mortgage was of record and she was charged with notice of its contents. Having accepted the deed subject to the mortgage, she is estopped to deny its validity. (*Moffat v. Fouts,* 99 Kan. 118, 160 Pac. 1137; *Farmers State Bank v. Bank of Inman,* 123 Kan. 238, 254 Pac. 1038.)

It is therefore clear the trial court committed no error in sustaining the motion to strike.

The judgment is affirmed.